**CARON CORPORATION v. WOLF DRUG CO. et al.**

Civil No. 1298.

District Court, D. New Jersey.

July 26, 1941.

Choate, Byrd, Leon & Garretson, by William Byrd, all of New York City, for plaintiff.

Kraemer, Siegler & Siegler, by Joseph Kraemer, all of Newark, N. J., for defendants.

WALKER, District Judge.

The plaintiff, a corporation of the State of New York, owner of certain trade marks registered in the United States Patent Office for perfumes and other toilet preparations,[1] is engaged in selling and distributing in the State of New Jersey and elsewhere in the United States, perfumes bearing trade marks so registered, in open competition with goods of the same general class produced by others. Said perfumes have enjoyed and still enjoy a high reputation in New Jersey and elsewhere under the trade mark "Caron" and the particular

---

[1] More particularly identified in the complaint.

trade mark used by it on each of its perfumes as aforesaid.[2]

On or about March 1, 1938, plaintiff duly notified the defendants, who are residents of the State of New Jersey, of its rights under the New Jersey Fair Trade Act, by forwarding notice, form of contract, price list and catalog.[3]

The plaintiff charges that the defendants, well knowing the rights of the plaintiff under the New Jersey Fair Trade Act,[4] and in violation thereof, advertised, offered for sale and sold certain of plaintiff's products consisting of perfumes, at prices less than the prices set by the plaintiff in its price list and catalog, which have been in force continuously since March 1, 1938.

The matter comes before the court at this time on application of the plaintiff for a preliminary injunction and on motion of the defendants to vacate the order for a temporary injunction heretofore entered; for an order dismissing the action on the ground that the court lacks jurisdiction because the amount in controversy is less than $3,000, exclusive of interest and costs or for an order of dismissal due to an absence of equity.

■ Decision on whether or not there is an absence of equity must await final hearing, so it is passed without further discussion.

■ It is a firmly established principle of law that when a litigant seeks an injunction to protect a right, and shows that some invasion of that right has occurred or been threatened, the test of the jurisdictional amount is the value of the right that is to be protected and not the extent of the monetary loss or damage which has been suffered or is threatened by the invasion.[5]

■ The nature of the right asserted by the plaintiff and the elements that go to make up its value are to be ascertained in order to determine whether the amount in controversy is more than $3,000, ex-

clusive of interest and costs.[6] Basically, the right of the plaintiff is to have its commodities advertised, offered for sale, or sold by the retailers at no less than the price stipulated in any contract entered into pursuant to the provisions of Section 56: 4–5.[7] It is the right to enforce contracts standardizing the price at which its "identified" commodities are to be sold and the price standardization is primarily effected to protect the good will created or enlarged by the identifying mark or brand.[8]

In Old Dearborn Distributing Corporation v. Seagram-Distillers Corporation, supra, the Supreme Court had to decide the constitutionality of Sections 1 and 2 of the Illinois Fair Trade Act, Smith-Hurd Stats. Ill. c. 121½, §§ 188, 189, at the time the matter arose they were substantially the same as 56:4–5 and 56:4–6 of the New Jersey Act. The Court said:

"In the second place, section 2 does not deal with the restriction upon the sale of the commodity qua commodity, but with that restriction because the commodity is identified by the trade-mark, brand, or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand, or name in accomplishing such disposition. The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself.

* * *

"Section 2 of the Act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault

---

[2] The foregoing facts have been pleaded by the plaintiff and admitted by the defendants in their answer.

[3] Footnote No. 2, supra.

[4] 56:4–3 et seq., Revised Statutes of New Jersey, 1937, N.J.S.A. 56:4–3 et seq.

[5] Taken from Miles Laboratories, Inc. v. Seignious, D.C., 30 F.Supp. 549, at

page 554. Also see cases cited in footnote 2 on page 554 of 30 F.Supp.

[6] See 38 Harvard Law Review page 738.

[7] Revised Statutes of New Jersey, 1937, N.J.S.A. 56:4–5.

[8] Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 299 U.S. 183, 57 S.Ct. 139, 144, 81 L.Ed. 109, 106 A.L.R. 1476.

upon the good will, and constitutes what the statute denominates 'unfair competition' ".

The Supreme Court in the case aforesaid holds that prices in respect of "identified" goods may be fixed under legislative leave and the primary aim of such a law is to protect the property—namely, the good will —of the producer, and redress or relief will be granted upon the ground that a party has a valuable interest in the good will of his trade or business and in the trade marks adopted to maintain and extend it.

In Miles Laboratories v. Seignious, supra, the court considered the South Carolina Fair Trade Act, and held, that the right of the plaintiff to sell its products in South Carolina and to realize upon the value of its good will therein established, was threatened with disruption by the price-cutting activities of the defendant and the vast amount spent by Miles Laboratories in advertising and the resulting substantial volume of sales of its products, established the value of its right to distribute the product to the public in South Carolina as being substantially in excess of the jurisdictional amount of $3,000, exclusive of interest and costs.[9]

The plaintiff has a right to protect its property, namely, its good will, by price restriction, and the sale of its "identified" goods at less than the price fixed by it is an assault upon said good will and constitutes "unfair competition".

The proof herein that since the Caron Corporation was incorporated in 1923, the sales of its "identified" commodities have been in excess of $14,000,000, and its advertising expenditures in excess of $1,700,000; that it has approximately 2,-500 accounts throughout the United States, 42 in New Jersey and 11 within the City of Newark, are elements which establish that the value of the right which the plaintiff seeks to protect, exceeds the jurisdictional amount of $3,000, exclusive of interest and costs.[10]

The defendants rely upon McNutt, Governor of Indiana, et al. v. General Motors Acceptance Corporation of Indiana, Inc.,[11] and Kvos, Inc., v. Associated Press[12] The McNutt case involves a statute regulating auto financing. It follows the general rule that "the value of the object or right to be protected against interference" is the standard for determining whether or not the jurisdictional amount is involved. However, the court said this right to be protected against interference was not the broad right to conduct the business which would be measured by the value of the business, but the specific right to be free of regulation "measured by the loss, if any, which would follow the enforcement of the rules prescribed".

The Associated Press case was a suit to enjoin a radio station from pirating news gathered by the Associated Service. The court followed the McNutt formula and dismissed as irrelevant, general facts about annual expenditures and the magnitude of the operations of the Association. The attempt by the Association to prove specific damage was also dismissed, not as irrelevant, but as unsatisfactory.[13]

Neither case had to do with the sale of "identified" commodities and price restriction as an appropriate means of protecting good will, they are distinguishable.

The motions of the defendants are denied and a preliminary injunction will be granted the plaintiff.

[9] See Calvert Distributing Co. v. Brandon, D.C., 24 F.Supp. 857 (Fair Trade Act of South Carolina); Calvert Distillers Corp. v. Stockman, D.C., 26 F.Supp. 73 (Fair Trade Act of New York); James Heddon's Sons v. Callender, D.C., 28 F.Supp. 643 (Fair Trade Act of Minnesota.)

[10] Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C., 20 F. Supp. 703; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774; General Shoe Corporation v. Rosen, D.C., 29 F.Supp. 102; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F. 2d 711, certiorari denied, 305 U.S. 607, 59 S.Ct. 67, 83 L.Ed. 386.

[11] 298 U.S. 178, 56 S.Ct. 780, 781, 80 L.Ed. 1135.

[12] 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183.

[13] See Federal Jurisdictional Amount Requirement in Injunction Suits, 49 Yale Law Review, 274.