## PEPSODENT CO. v. KRAUSS CO., LIMITED.

### Civ. A. No. 660.

District Court, E. D. Louisiana,
New Orleans Division.

Aug. 24, 1944.

Monroe & Lemann and Walter J. Suthon, Jr., both of New Orleans, La., Taylor, Miller, Busch & Boyden and Robert F. Carney, all of Chicago, Ill., for plaintiff.

Milling, Godchaux, Saal & Milling and L. K. Benson, all of New Orleans, for defendant.

BORAH, District Judge.

This action was brought by plaintiff to enjoin defendant from wilfully and knowingly advertising, offering for sale or selling, the commodities which bear, or the labels or containers of which bear, the trademarks and name of the plaintiff, at less than the minimum prices prescribed by plaintiff under and pursuant to its contracts with retailers entered into in conformity with the Louisiana Fair Trade Act. The prayers were for temporary and permanent relief.

A preliminary injunction has issued, the pleadings are closed and the matter now before the court for determination is defendant's motion for judgment on the pleadings.

The motion sets forth that defendant is entitled to a judgment in its favor on the pleadings, "for the reason that, as applied to defendant under the facts alleged in the complaint, Section 2 of Louisiana Act 13 of 1936 conflicts with Section 1 of the Sherman Act, as amended, 15 U.S.C.A. § 1, and is, hence, invalid." And then follows this concluding sentence: "Therefore the complaint fails to state a claim upon which relief can be granted."

The complaint is based upon Act 13 of the Legislature of Louisiana for the year 1936, commonly known as the Louisiana Fair Trade Act. Section 1 of this statute provides in substance that no contract relat-ing to the sale or resale of a trade-marked commodity, which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Louisiana by reason of any of the following provisions which may be contained in such contract:

"1. That the buyer will not resell such commodity except at the price stipulated by the vendor.

"2. That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee."

But there is no claim on the part of plaintiff that it entered into any contract with defendant pursuant to the provisions of Section 1. Consequently it follows that plaintiff's action is predicated entirely upon section 2 of this act, which provides as follows: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of Section 1 of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

If therefore section 2 of the foregoing statute is invalid on the ground that section 1 of the Sherman Act, as amended, prohibits such resale price maintenance against a non-contracting retailer in interstate commerce, it follows that defendant is entitled to judgment in its favor on the pleadings.

The determination of this case thus turns upon the construction of the Miller-Tydings amendment to Section 1 of the Sherman Act. This section, as amended, reads as follows:

"1. Trusts, etc., in restraint of trade illegal; exception of resale price agreements; penalty

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: Provided, That nothing contained in sections 1–7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer

or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45, as amended and supplemented, of this title: Provided further, That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other. Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1–7 of this title to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court. July 2, 1890, c. 647, § 1, 26 Stat. 209; Aug. 17, 1937, c. 690, Title VIII, 50 Stat. 693."

The defendant contends that in enacting the Miller-Tydings amendment Congress did not depart from the rule that price maintenance of every description is per se an unreasonable restraint of trade and invalid; that Congress made a single exception by adopting the Miller-Tydings amendment in that it provided that "contracts or agreements" of the character described therein should no longer be tainted with that illegality with which all other contracts and combinations in restraint of trade were affected. In other words, Congress simply made legal a specific type of "contract or agreement," viz., the resale price maintenance contract, which prior to the amendment was illegal. And defendant contends that the mere fact that Congress has removed the prohibition against combinations in restraint of trade in so far as the parties to a fair trade contract are concerned is not evidence of the fact that it intended to make resale price maintenance enforcible against retailers such as defendant who would not enter into such contracts.

Plaintiff on the other hand contends that the legislative history of the Miller-Tydings amendment makes it clear that Congress intended to leave each state free to deal in its own discretion with the problem of resale price maintenance and not to leave that subject in the same locality governed, in a hybrid fashion, by local law as to the activities of contracting retailers and by federal law as to the completing activities of non-contracting retailers.

■ The meaning of this amendment must be determined from a considered weighing of every relevant aid to construction. United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356. While there is no invariable rule for discovering the intent of Congress, the function of the courts, in the interpretation of statutes, has been often stated. In Takao Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199, the court said: "It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail."

Similar expressions are likewise to be found in some of the more recent decisions of the United States Supreme Court. United States v. American Trucking Ass'ns, 310 U.S. 534, 542–544, 60 S.Ct. 1059, 84 L.Ed. 1345; Harrison, Collector of Internal Revenue, v. Northern Trust Co. et al., Executors, 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 407; B. F. Goodrich Co. v. United States, 321 U.S. 126, 64 S.Ct. 471.

Coming now to the legislative history of the Miller-Tydings amendment we find that on January 5, 1937 Mr. Miller introduced into the House H. R. 1611, the text of which was substantially the same as that of 15 U.S.C.A. § 1, supra, except that the first proviso of this bill read as follows: "Provided, That nothing herein contained shall render illegal contracts or agreements prescribing minimum prices or other conditions

for the resale of a commodity which bears. * * *"

On the following day Senator Tydings introduced into the Senate S. 100, identical in text with H. R. 1611 save for a few immaterial variances in phraseology.

On April 24, 1937, after the bills had been reported favorably by the Judiciary Committees of the Senate and House, President Roosevelt addressed a communication to the President of the Senate reading in part as follows:

"My attention was called to S. 100, which would render legal certain contracts for the maintenance of resale prices now illegal under federal law. I requested the Chairman of the Federal Trade Commission to give me a recommendation on this bill, and I attach his reply on behalf of the commission.

*  *  *  *  *  *

"Since we seem to be in a period of rising retail prices, this bill should not, in my judgment, receive the consideration of the Congress until the whole matter can be more fully explored. * * *"

The report submitted by the Chairman of the Federal Trade Commission contains these two pertinent paragraphs:

" * * * The Tydings-Miller bill would amend the Anti-Trust laws so as to legalize contracts and agreements fixing minimum resale prices for goods sold in interstate commerce and resold within the jurisdiction of any state where such contracts or agreements as to intrastate commerce have been legalized. A number of states now have such statutes.

*  *  *  *  *  *

"A peculiar feature of many of the state laws which would, under a recent decision of the Supreme Court, speaking through Mr. Justice Sutherland ([The Pep Boys, Manny, Moe & Jack, of California v. Pyroil Sales Co., 299 U.S. 198] 57 S.Ct. 147 [81 L.Ed. 122]) thus be made binding upon interstate commerce is that they require wholesalers and retailers to conform to the provisions of private resale price maintenance contracts to which they are not parties. Thus, a private contract, the provisions of which are determined without public hearing and apart from any public supervision as to reasonableness, is made binding upon all dealers and the consuming public."

Acting no doubt pursuant to the President's request and the recommendation of the Federal Trade Commission, both houses postponed further consideration of H. R. 1611 and S. 100.

On June 10, 1937, H. R. 7472, providing additional revenue for the District of Columbia, was introduced in the House and referred to the Committee on the District of Columbia. On June 21, 1937, after its passage by the House, H. R. 7472 was read in the Senate and referred to the Senate Committee on the District of Columbia. In the Senate Committee hearings H. R. 7472 was amended to add thereto the provisions of H. R. 1611 and S. 100 except that the words "or other conditions" in the first proviso of these bills were not carried forward in the amendment. The bill was reported out of that committee with amendments on July 7, 1937, in Report No. 879 from which we quote the following: "Title VIII of this bill, as reported by your committee, includes a provision amending the anti-trust laws which incorporates the provisions of S. 100, which was reported from the Committee on the Judiciary on March 29, 1937. In reporting S. 100 the Committee on the Judiciary incorporated a report on a similar bill (S. 3822) which was made during the Seventy-fourth Congress. That report which is also applicable to S. 100 and Title VIII of this bill, is as follows."

And then follows the report with this concluding language:

"But most important, from the standpoint of Congress, the proposed bill merely permits the individual states to function, without Federal restraint, within their proper sphere, and does not commit the Congress to a national policy on the subject matter of the state laws.

"In other words, the bill does no more than to remove Federal obstacles to the enforcement of contracts which the states themselves have declared lawful."

Senator King, a member of the Committee on the District of Columbia, was a vigorous opponent of the Miller-Tydings amendment. In a Minority Report he quoted the letter, supra, which the Chairman of the Federal Trade Commission had addressed to the President and make it plain that he likewise fully understood that the proposed legislation would make state statutory resale price maintenance effective against non-contracting sellers. In his speech on the floor of the Senate in opposition to H. R. 7472 he presented orally the same material and expressed the same view. (Report 879, Part 2, p. 6, 81 Cong.Rec. 7491.)

The Senate took up the consideration of Title VIII of H. R. 7472 on July 23, 1937 and on that date Senator Tydings introduced on the floor of the Senate an amendment thereto which he said cured the objections that the President had theretofore made to S. 100. The bill containing Title VIII as amended by Senator Tydings was passed by the Senate after full debate.

The House did not agree to the Senate amendments and as the Senate did not recede from its amendments Conferees were appointed. Later when the conference report was called up the House Conferees recommended that the House recede from its disagreement with the Senate amendment containing the Miller-Tydings Act, and after debate, the House receded and agreed to the adoption of the conference report. The Senate also agreed to the conference report and the bill became a law on August 17, 1937.

During the debate on the proposed amendment, Senator Tydings emphasized that the purpose of the measure was to "back up" the fair trade statutes enacted by the various states. The senator said:

"What we have attempted to do is what 42 States have already written on their statute books. It is simply to back up those acts, that is all; to have a code of fair trade practices written not by a national board such as the N.R.A. but by each state, so that the people may go to the State legislature and correct immediately any abuses that may develop.

\* \* \* \* \* \*

" \* \* \* as 42 States have already enacted similar legislation, I ask, on the further ground of State rights and decentralized government, that the action of these 42 States be supported." 81 Cong.Rec. 7496.

Mr. McLaughlin, a member of the Committee on the Judiciary of the lower house, and of Subcommittee No. 3, which held a hearing on H. R. 1611, supra, made the following statement on the occasion when the conference report upon H. R. 7472 was being debated in the House:

"In the hearings before the committee and in the debates upon the bill in the committee itself, it was suggested that there are two points which may be considered in the nature of objections to the bill. The committee discussed these points and considered that they did not constitute valid objections. However, in order to present the matter fully to the House, these objections should be referred to. These objections are:

"First. That H. R. 1611, if enacted, would impose a penalty upon a seller of merchandise for selling such merchandise below the minimum price agreed upon in a contract to which he is not a party.

\* \* \* \* \* \*

"The objections were overruled by the committee after a consideration of the testimony bearing upon them and after full discussion of the objections.

"The first objection, namely, that H. R. 1611, if enacted, will permit resale contracts to be binding upon parties other than the parties to the contract itself, is fully answered by the statement that the respective state laws make provision that the contract shall be binding upon all those who sell the trade-marked article which is the subject of the resale contract whenever the person selling the article below the contract resale price does so wilfully and knowingly. This argument is well answered by the controlling opinion of the Supreme Court of the United States in the case of Old Dearborn against Seagram, supra, upholding the validity and constitutionality of the Illinois State Fair Trade Practice Act. \* \* \*

\* \* \* \* \* \*

"Further complete answer to this objection is that the respective States in the exercise of their wisdom and judgment imposed the penalties provided in the respective State acts. The bill before us today, if enacted, merely makes effective the law which has been enacted by the respective State legislatures to govern transactions within their own borders."

The defendant seeks to make much of the fact that the words "or other conditions" were omitted from the original text of H. R. 1611 and S. 100 when the Miller-Tydings Act was added as a rider to H. R. 7472. It is argued that H. R. 1611 and S. 100 sought to legalize contracts of a much broader scope than does H. R. 7472; that the bills are not substantially identical and for that reason the statements by Members of Congress with respect to the former do not apply with equal force to the latter.

I cannot agree with defendant's contention that the bills are not substantially identical nor is its view that of the Managers on the part of the House on the Conference Committee Report on H. R. 7472, for they say that "the Senate added a new title which

contained the substance of the Miller-Tydings Bill." Nor is it the view of Mr. McLaughlin, for he used this language when speaking with regard to Title VIII of H. R. 7472: "The adoption of the Conference Report now before the House will result in the enactment of the Miller-Tydings bill. That bill, H. R. 1611, has been acted on by the Committee on the Judiciary and by the Rules Committee. In these remarks I shall refer to the Miller-Tydings amendment, which is included in the Conference Report, as H. R. 1611."

The defendant's argument is not persuasive. Since the present controversy relates wholly to prices, the omission of the words "or other conditions" from the measure as finally enacted could not possibly have a bearing upon the present issue.

The defendant also stresses the point that Mr. McLaughlin referred to the pending measure as H. R. 1611, while the report of the Committee of Conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill deals with H. R. 7472. Defendant, however, overlooks the fact that Mr. McLaughlin prefaced his remarks by saying, "I shall refer to the Miller-Tydings amendment, which is included in the Conference Report, as H. R. 1611."

Furthermore, this corollary objection falls with the defendant's main proposition; namely, the objection that the two bills are materially different. H. R. 1611 and S. 100 were pending in their respective houses when H. R. 7472 was enacted and there can be no doubt that the substance of these bills was added to and made a part of H. R. 7472.

The history of the legislation leaves no doubt that Congress enacted the Miller-Tydings amendment with full knowledge of the provisions in state fair trade acts making resale price maintenance effective against non-contracting retailers, and that it was the design and intention of Congress to remove every obstacle which would hinder the free enforcement by the states of the provisions of their local fair trade acts in such fashion as their respective legislatures saw fit.

Plaintiff's construction of the Miller-Tydings amendment being fully supported by its background and history, it follows that the motion of defendant for judgment on the pleadings must be denied.