**SUNBEAM CORPORATION v. WENTLING.**

No. 3400.

United States District Court
M. D. Pennsylvania.

June 10, 1950.

Ira Jewell Williams, Philadelphia, Pa., James S. Berger, Coudersport, Pa., for plaintiff.

Samuel A. Schreckengaust, Jr. (Of Mc-Nees, Wallace & Nurick), Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

This is a suit for injunctive relief and damages under the Fair Trade Act of the Commonwealth of Pennsylvania, approved June 5, 1935, P.L. 266, as amended June 12, 1941, P.L. 128.

The title to the said Act reads as follows: "To protect trade-mark owners, distributors, and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name."

The pertinent portion of the Act, as amended, provides as follows, 73 P.S. §§ 7 and 8:

"No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, or the vending equipment from which said commodity is sold to the consumer bears the trade-mark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity, except at the price stipulated by the vendor.

"(b) That the buyer of such commodity require upon his resale of such commodity that the purchaser from him agree that such purchaser will not in turn resell except at the price stipulated by the vendor of the buyer. ·

"Such provisions in any contract shall be deemed to contain or imply· conditions that such commodities may be resold without reference to such agreement in the following cases:

"(a) In closing out the owners stock for the purpose of discontinuing delivering any such commodity.

"(b) When the goods are damaged or deteriorated in quality, and notice is given the public thereof.

"(c) By any officer acting under orders of any court or in the execution of any writ or distress."

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair. competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity."

This Act must be read in connection with Section 1 of the Sherman Act, as amended by the addition of the two proviso clauses known as the Miller-Tydings Amendment. July 2, 1890, c. 647, § 1, 26 Stat. 209, Aug. 17, 1937, c. 690, Title VIII, 50 Stat. 693, 15 U.S.C.A. § 1. This Act as so amended reads as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: *Provided,* That nothing contained in sections 1–7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported

for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45, as amended and supplemented, of this title: *Provided further,* That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other. Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1–7 of this title to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

The plaintiff, the manufacturer of a trade-marked product known as "Sunbeam Shavemaster," pleads diversity of citizenship with defendant and bases its claim of the existence of the required jurisdictional amount on the statement that its good will, under certain lawful contracts and its rights under the Pennsylvania Fair Trade Act aforesaid, is in excess of $10,000.00.

Plaintiff further avers that the said Sunbeam Shavemaster is in fair and open competition with commodities of the same general class produced by others; that it is the sole owner of said trade-mark; that the said trade-marked article has a good reputation among wholesalers and retailers and with the public generally; that it has been widely advertised throughout the United States in many nationally distributed publications; that an extremely valuable good will as a consequence of said advertising and of the intrinsic merit of the product attaches to the said article and its trade-mark; that said article has been and now is sold and distributed throughout the State of Pennsylvania and plaintiff enjoys a good business therefrom; that plaintiff has entered into a number of retail contracts with retailers doing business in the State of Pennsylvania, and attached to the complaint are copies of the said contracts and Fair Trade Price Lists.

Plaintiff also avers that defendant has been guilty of unfair competition in that it has violated plaintiff's minimum retail price agreements; that he has by advertisement in various publications offered to sell the said trade-marked article at a price less than plaintiff's fair trade price;[1] that plaintiff on several occasions wrote to defendant informing him that its products were sold under the Fair Trade Act of Pennsylvania and requesting defendant to desist from offering for sale or selling said trade-marked article for less than the fair trade price; that plaintiff has received numerous complaints from retailers of its products throughout the country protesting against defendant's cut price advertising; that notwithstanding repeated notifications, defendant wilfully continued to offer for sale and to sell plaintiff's trade-marked Sunbeam Shavemaster at a price of $17.25 still knowing that the fair trade price thereof was $23.50.

Plaintiff finally alleges that such unfair competition on the part of defendant has caused plaintiff great monetary damage and that it has no adequate remedy at law unless defendant is enjoined from further acts of unfair competition.

An answer was filed by the defendant wherein he admitted substantially all of the allegations of the complaint, excepting that he denied that his advertisements constituted offers to sell; denied the jurisdiction of this Court; denied that there was any good will attached to plaintiff's trade-mark, and finally, for multifarious reasons denied the constitutionality of the Pennsylvania Fair Trade Act. Defendant further filed a counterclaim for damage to his business on the theory that plaintiff's assertion of

---

1. Paragraph V of the complaint states, inter alia,

"* * * On page 83 of 'The American Rifleman' for May, 1948, the defendant inserted the following advertisement:

'Schick Super Electric Shavers $13.00, Remington Foursome $14.00, Shavemaster $17.25, new, latest models. S. A. Wentling Palmyra, Penna.' "

right under the Pennsylvania Fair Trade Act was contrary to the Sherman Anti-Trust Act.

Subsequently thereto, and after due notice to defendant, plaintiff took the deposition of Edward K. Ploner, plaintiff's Vice-President. After the filing of the deposition, plaintiff moved for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., which motion is presently before the Court.

Mr. Ploner in his deposition avers, among other things, that the method of sale and distribution followed by plaintiff is through approximately eight hundred wholesale distributors who, in turn, sell to upward of seventy thousand retailers throughout the entire United States; that its advertising is in national magazines, local newspapers and television; that the company's approximate sales of shavers for 1946 were $1,925,000.-00; in 1947, $4,057,000.00; in 1948, $5,863,-000.00, and in the first six months of 1949, $1,847,000.00; that the diminishing sales in 1949 were attributable to the fact the company stayed out of the market for about five months to give their distributors, wholesale and retail, an opportunity to reduce their stock of an old model when a new model was introduced; that the company spent in direct advertising of the Shavemaster in 1946 approximately $98,-000.00; in 1947, $230,000.00; in 1948, $354,-000.00, and the first six months of 1949, $140,000.00; that when a new model is introduced the company issues a supplement to outstanding Fair Trade contracts in which prices are quoted and the effective date given; that following defendant's advertising the company received complaints from wholesale and retail distributors in Wisconsin, California, Maryland, Delaware, District of Columbia, Pennsylvania, Illinois, Minnesota and Nebraska; that the total sales of Shavemaster in Pennsylvania in 1948 was approximately $420,000.00; that in 1948 the company had about fifty wholesale and seventy-three hundred retail distributors in Pennsylvania; that unchecked violations of Fair Trade prices are detrimental to the sale of trade-marked merchandise.

Thereafter, defendant filed an affidavit setting forth, inter alia, that he never saw any executed contract between plaintiff and any retailer, or the price list shown in Exhibit "A" of the complaint, prior to service of complaint on him; that he did not use the Shavemaster as a loss-leader, and was never notified by plaintiff of the discontinuance of or change in price of Shavemaster.

The complaint avers that following the May, 1948, advertisement in "The American Rifleman" plaintiff on June 8, 1948, wrote defendant as above indicated and attached to this letter two copies of its Pennsylvania Fair Trade Contract, as well as a retail price list, and invited defendant to sign both copies, return to plaintiff after which it would execute a copy and return to defendant and thus include him as one of its co-operating dealers. Defendant continued to advertise as before, whereupon plaintiff again wrote defendant on June 24, 1948, July 23, 1948, and March 4, 1949, and on the latter date by telephone conversation through its counsel again reiterating all that had previously been written. These averments are either admitted or not denied in the answer. The advertisements continued through November, 1948.

In his affidavit defendant avers,

"2. That he denies ever having seen any executed contract between the Sunbeam Corporation and any retailer prior to service upon him of the complaint.

"3. That he denies ever having seen the price list shown in Exhibit 'A' of the complaint before said complaint was served on him."

The copies of plaintiff's Pennsylvania Fair Trade contracts attached to the complaint as Exhibit "A" purport to be copies of executed contracts. Defendant in his affidavit admits receiving an unexecuted copy of the identical form.

The copy of the price list attached to the complaint as part of Exhibit "A", being the letter and exhibits referred to therein, which letter defendant in paragraph VI of his answer admits having been forwarded to him, is printed on white paper and

quotes prices effective July 5, 1948. Defendant in his affidavit denies the receipt of this price list, but in his answer he admitted the mailing of the letter which referred to the price list and admitted the receipt of a price list printed on yellow paper and which carried the date of April, 1948. Both lists quote the Shavemaster as Cat. No. "S" at $23.50.

■ From the pleadings, deposition and affidavit there is, in my opinion, no genuine issue as to any material fact.

We have here in the plaintiff the owner of two trade-marks, namely, "Sunbeam" and "Shavemaster"; that it advertised and distributed a shaver under those two trade-marks; that it entered into Fair Trade contracts with retailers in Pennsylvania under the provisions of Pennsylvania Fair Trade Act; that defendant with knowledge of outstanding Fair Trade contracts in Pennsylvania and price lists in connection therewith, advertised and sold six Shavemasters for $17.25 each when the listed Fair Trade price was $23.50; that said advertisement specifically used the trade-marked name of "Shavemaster." There is no question but that this plaintiff has at a tremendous expense built up a good will for its trade-marked products.

■ I see no merit in defendant's captious complaints about his lack of knowledge. He admits receiving a copy of plaintiff's blank form Pennsylvania Fair Trade contract. He complains he did not see an executed copy thereof. I find nothing in the Act to indicate that defendant would be entitled to a copy of an executed contract. He was given a copy of the form of contract used in Pennsylvania and he was told that it was such. That was sufficient notice.[2]

■ Whether the copy of the price list attached to the complaint giving the effective date as of July 5, 1948, is or is not the same as defendant admits receiving and which was dated April, 1948, is entirely aside from the point. The fact remains both carried the only item we are here concerned with, with the same catalogue number and same price.

■ Finally, the defendant complains that he was not advised of subsequent price lists. So far as the record goes, the price of this article remained constant throughout the period covered by defendant's advertisements. The objection is therefore without merit.

In Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S. Ct. 139, 144, 81 L.Ed. 109, 106 A.L.R. 1476; the court had before it Sections 1 and 2 of the Illinois Fair Trade Act, Smith-Hurd Rev.Stat.Ill.1935, c. 121½ §§ 188 and 189, which at that time was substantially the same as Sections 1 and 2 of the Pennsylvania Act. In holding that the Illinois Act was not in violation of the Fourteenth Amendment to the Constitution of the United States, the court stated, inter alia,

"In the second place, section 2 does not deal with the restriction upon the sale of the commodity qua commodity, but with that restriction because the commodity is identified by the trade-mark, brand, or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand, or name in accomplishing such disposition. The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself.

\* \* \* \* \* \*

"\* \* \* Section 2 of the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good

2. In Bristol-Myers Co. v. Lit Brothers, Inc., 336 Pa. 81, 6 A.2d 843, 845, the court quoted a finding by the chancellor as follows: " 'That after defendant had notice * * * that plaintiff had entered into contracts with others fixing the re sale price of plaintiff's products, it always sold Ipana Tooth Paste * * * and Sal Hepatica * * * at the resale prices fixed by plaintiff in contracts with others';".

will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates 'unfair competition.' * * * ,

"There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the good will and business of the producer and distributor of identified goods, but injurious to the general public as well. * * *"

I find no merit in any of the defendant's many reasons advanced in an effort to prove that the Pennsylvania Fair Trade Act is in violation of the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania.

As stated in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra, even though this plaintiff parted with the ownership of the six shavers involved in this case, it did not part with the good will that it had at great expense built up around the trade-mark name of those razors, namely, "Sunbeam" and "Shavemaster." This defendant did not advertise merely a razor for sale, he advertised a "Shavemaster" electric razor. By so doing he has invaded a right that this plaintiff has been given by the Fair Trade Act of the Commonwealth of Pennsylvania in respect to a sale made under the terms of that Act and that trade-mark must be kept inviolate whether the sale is intrastate or interstate.

It is true the Pennsylvania Supreme Court has never passed upon the constitutionality of the Pennsylvania Fair Trade Act; on the other hand, it has not hesitated to construe and enforce the Act.[3]

In a very well considered opinion in Pepsodent Co. v. Krauss Co., Limited, D.C.E.D. La., 56 F.Supp. 922, 927, Judge Borah stated, "The history of the legislation leaves no doubt that Congress enacted the Miller-Tydings amendment with full knowledge of the provisions in state fair trade acts making resale price maintenance effective against non-contracting retailers, and that it was the design and intention of Congress to remove every obstacle which would hinder the free enforcement by the states of the provisions of their local fair trade acts in such fashion as their respective legislatures saw fit."

Congress has spoken and the legislature of Pennsylvania has spoken and there is no doubt in my mind what was the legislative intent in both instances. As to the wisdom of such legislation, we are not here concerned. As indicated above, I find nothing in the legislation violative of either the Constitution of the United States nor that of the Commonwealth of Pennsylvania.[4] All of the jurisdictional requirements are present here.

I am, therefore, of the opinion that the admitted acts of the defendant in cutting the price of plaintiff's trade-marked product are in direct violation of the Fair Trade Act of the Commonwealth of Pennsylvania; that the actions of the defendant threaten irreparable damage to the plaintiff;[5] that the plaintiff has no adequate

3. Lentheric, Inc., v. F. W. Woolworth Co., 338 Pa. 523, 13 A.2d 12; Bristol-Myers Co. v. Lit Brothers, Inc., 336 Pa. 81, 6 A. 2d 843. In the latter case the court held that the peculiar facts of the case did not of themselves amount to such unfair competition as the Fair Trade Law forbids. Under the circumstances I feel that Shipman et al. v. Du Pre, 70 S.Ct. 640, 94 L.Ed. ——, has no application here.

4. For a very able discussion of the constitutionality of a Fair Trade Act of the State of South Carolina similar to that of the Commonwealth of Pennsylvania,

see Miles Laboratories, Inc., v. Seignious, D.C.E.D.S.C., 30 F.Supp. 549.

5. Apropos of the propriety of injunctive relief in the instant case, in Swift & Company et al. v. United States, 276 U.S. 311, 48 S.Ct. 311, 315, 72 L.Ed. 587, Mr. Justice Brandeis, speaking for the court, said "The argument ignores the fact that a suit for an injunction deals primarily, not with past violations, but with threatened future ones; and that an injunction may issue to prevent future wrong, although no right has yet been violated."

remedy at law and is entitled to the injunctive process of this Court for its protection. A decree for permanent injunction is being filed contemporaneously with this opinion.

### Decree

Now, to wit., June 10, 1950, the defendant, S. A. Wentling, is permanently enjoined and restrained from committing further acts of unfair competition in relation to Fair Trade marked products of plaintiff, Sunbeam Corporation, and from violating said plaintiff's fair trade agreements, and the defendant's counterclaim is dismissed.