GENERAL ELECTRIC COMPANY

v.

Edward SABREEN and Benjamin Leib, co-partners, trading as Sabreen Appliance Co.

GENERAL ELECTRIC COMPANY

v.

Harry SEGAL, individually and trading as Harry's Sales Co.

GENERAL ELECTRIC COMPANY

v.

Nathan J. BARSKY and Harold J. Barsky, co-partners, trading as N. Barsky & Son.

Nos. 15966, 15967, 15968.

United States District Court, E. D. Pennsylvania.

Dec. 4, 1953.

Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Harry Goldbacher, Philadelphia, Pa., for defendants Edward Sabreen and Benjamin Leis.

James W. Kelly, Philadelphia, Pa., for defendant Harry Segal.

Trommer, Silver & Barsky, Philadelphia, Pa., for defendants Nathan J. Barsky and Harold J. Barsky.

GANEY, District Judge.

Plaintiff brought these actions to restrain defendants from advertising, or offering for sale commodities manufactured by it at prices which are less than the minimum retail prices now or hereafter established by it in fair trade agreements made pursuant to the Pennsylvania Fair Trade Act[1], and entered

1. Act of 1935, P.L. 266, as amended by the Act of June 12, 1941, P.L. 128, No. 66, 73 P.S. § 7 et seq.

into with other dealers in this State. The matter is now before the court on motions to dismiss filed by the defendants to the respective actions. Diversity is the basis for this court's jurisdiction.

The complaints, in part, allege as follows: Plaintiff is engaged in the manufacture, among other things, of electrical appliances for the household. These commodities, bearing plaintiff's trademark, are sold throughout Pennsylvania in fair and open competition with commodities of the same general class produced or manufactured by others. It has spent large sums of money in promoting and advertising its commodities both nationally and in this State. As a consequence of the merit and advertising of its commodities, plaintiff has acquired a valuable reputation and goodwill for such products and trade-mark.

For the purpose of protecting its trade-mark and goodwill, as well as the interest of retailers, plaintiff has entered into Fair Trade Agreements, all in the same form, with a number of dealers of its commodities in Pennsylvania. These agreements, in part, state: "Dealer agrees that, except as otherwise specifically permitted by any applicable Fair Trade Act or other similar statute, it: a. will not advertise, offer for sale, or sell any of the said General Electric fair traded products at less than the minimum retail prices stipulated by General Electric, plus in each sale the amount of all applicable sales and excise taxes,". These agreements are still in effect.

After they were adequately notified of the existence of the agreements, and also of the minimum retail prices established thereunder, defendants have willfully offered for sale, have sold plaintiff's commodities and are continuing to do so at prices lower than the minimum retail prices established by plaintiff under the agreements. The sales in question were not for the purpose of closing out defendants' stock of plaintiff's commodities, or because such commodities were damaged or deteriorated in quality, nor were they made by an officer acting under orders of a court or in the execution of any writ or distress.

Unless defendants are enjoined from selling plaintiff's commodities at prices below the minimum retail prices, plaintiff's goodwill will be impaired and its trade-mark harmed.

The grounds for defendants' motions are two in number. The first is that this court lacks jurisdiction over the subject matter because the amount in controversy cannot be shown to be in excess of $3,000. The second is that the plaintiff has no status to maintain the present actions for the reason that plaintiff does not come within any one of those categories in which a suitor must be before he may bring an action under § 2 of the Act.

There can be no question that more than the jurisdictional amount is involved here. Sunbeam Corporation v. Wentling, D.C.E.D.Pa.1950, 91 F.Supp. 81, 87, modified on other grounds, 3 Cir., 185 F.2d 903, vacated without opinion 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed 1369; Calvert Distilling Co. v. Brandon, D.C.W.D.S.C.1938, 24 F.Supp. 857; James Heddon's Sons v. Callender, D.C. Minn.1939, 28 F.Supp. 643; Caron Corp. v. Wolf Drug Co., D.C.N.J.1941, 40 F. Supp. 103, 104–105. The fact that plaintiff has listed the value of its patents and other intangible assets (which includes goodwill) in its consolidated balance sheet and for tax reporting purposes as being worth one dollar cannot prevent it from asserting that its goodwill is worth more than the jurisdictional amount. Such fictitious listing and reporting, which are in accordance with almost universally accepted accounting practice, are not admissions on plaintiff's part that its goodwill is not worth more than one dollar. But even if they were, this court would not be bound by such admissions for the purpose of determining its jurisdiction over the subject matter of the actions.

In answer to defendants' second ground for the motions to dismiss, the first portion of § 1 of the Act, 73 P.S. § 7,

provides: "No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, or the vending equipment from which said commodity is sold to the *consumer* bears the trade-mark, brand or the name of the *producer or owner* of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract:

"(a) That the *buyer* will not resell such commodity, except at the price stipulated by the *vendor*.

"(b) That the *buyer* of such commodity require upon his resale of such commodity that the *purchaser* from him agree that such *purchaser* will not in turn resell except at the price stipulated by the *vendor* of the *buyer*."

Section 2 of the Act, 73 P.S. § 8, states: "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in *any contract* entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such *vendor, buyer or purchaser* of such commodity." (Italics ours.)

Thus it can be seen that the one who may bring an action under § 2 of the Act must fall into one of three categories: vendor, buyer or purchaser. When we refer to § 1 of the Act it will be seen that "vendor" and "buyer" refer to the parties who may enter into the contract which may form the first link in a chain of fair trade agreements. "Buyer" and "purchaser" are the designations given to the parties who may enter into subsequent contracts in the chain of agreements. Merely because § 1 of the Act specifically refers to "producer or owner" and does not include the description of those in that status in the category of persons who may bring suit under the Act, it does not follow that a producer

or owner is unable to do so. The designation "vendor" may include a producer or owner. It is therefore unnecessary for § 2 of the Act to specifically set forth that status in the categories in which a person must be before he may bring suit; the term "vendor" serves the purpose.

Although the plaintiff does not refer to itself as a vendor in the complaint, it is apparent to one who reads that pleading that plaintiff is a vendor within the meaning of the Act. Consequently it has a right to maintain these actions under the Act against the defendants, even though the latter are non-signers of any fair trade agreements involving plaintiff's commodities.

Accordingly, the defendants' motions in all three actions will be denied.

