**LANHAM FORD, INC., Plaintiff**

v.

**FORD MOTOR COMPANY, Defendant**

**No. CIV. PJM 02–4129.**

United States District Court,
D. Maryland.

June 23, 2003.

Brad D. Weiss, Esquire, Washington, D.C., for Plaintiffs.

Nicholas T. Christakos, Esquire, David A. Last, Esquire, Washington, D.C., for Defendants.

*OPINION*

MESSITTE, District Judge.

I.

This diversity action, in which the plaintiff seeks only injunctive and declaratory relief, was removed here from the Circuit Court for Prince George's County, Maryland. Plaintiff Lanham Ford has filed a Motion to Remand, arguing, inter alia, that the amount in controversy does not exceed $75,000, as required by 28 U.S.C. § 1332.

In a Memorandum Opinion dated February 24, 2003, the Court found that the value of the relief sought is that of Lanham Ford's prospective loss of its dealership and allowed Defendant Ford Motor Company (Ford Motor) limited discovery to establish the value of the dealership. In particular, Ford Motor was given 20 days to request Lanham Ford's income tax returns, balance sheets and other appropriate financial information for the last three years and to conduct relevant depositions. That discovery is now complete and the parties have filed supplemental pleadings in support of their original positions. On the basis of the record before the Court, the Motion to Remand will be DENIED.

Ford Motor also has pending a Motion to Dismiss, which Lanham Ford opposes. The Court will GRANT that Motion.

## II.

Lanham Ford is a licensed Ford dealership operating in Lanham, Maryland. It is a franchisee of Ford Motor pursuant to a Ford Sales & Service Agreement ("Dealer Agreement"). In February, 2002, Ford Motor sent a letter to Lanham Ford indicating its intention to terminate the Dealer Agreement on the basis of Lanham Ford's poor sales performance and personnel turnover. Pursuant to the Dealer Agreement, Lanham Ford appealed to the Ford Policy Board[1] and also filed a Complaint with the Maryland Motor Vehicle Administration. Lanham Ford asked Ford Motor to provide certain documents and access to information but Ford Motor refused. The parties thereafter appeared before the Policy Board, which affirmed the notice of termination, effective 30 days thereafter.

Lanham Ford then filed suit in the Prince George's County Circuit Court, following which the case arrived here. Lanham Ford complains that Ford Motor provided it with insufficient due process prior to and during the hearing before the Policy Board and asks this Court to grant it a new hearing with additional due process rights.

## III.

In its Motion to Remand, Lanham Ford argues that Ford Motor has failed to present prima facie evidence that the amount in controversy satisfies the $75,000 jurisdictional threshold for federal jurisdiction. *See* 28 U.S.C. § 1332(a); *see also Lupo v. Human Affairs Int'l., Inc.,* 28 F.3d 269, 273–4 (2d Cir.1994) (holding that the burden is on defendant, as the party invoking removal jurisdiction, to establish the existence of a sufficient amount in controversy). It reiterates the argument that the object of the litigation is the parties' franchise agreement. The Court rejected this argument in its February, 2002 Memorandum Opinion and does not intend to revisit it at this time.

■ Assuming that the object of the litigation is the dealership, Lanham Ford claims that Ford has not shown that it is worth more than $75,000. Lanham Ford suggests that at the end of 2002, it had a negative net worth of approximately 4.7 million dollars and that for the month of December, 2002, its operating profit was a negative $75,134. Lanham Ford also attacks the testimony of A.N. Gosline, offered by Ford, in which he declares that the value of the dealership is over $75,000. Lanham Ford notes that Gosline is neither certified nor qualified as a valuation expert or appraiser and that his valuation was based on assumptions and guesses.

---

1. The Dealer Agreement provides that any challenge to the termination of a dealership "shall be appealed by the Dealer to the Policy Board" and that such an appeal is a "condition precedent to the Dealer's right to pursue any other remedy."

Ford Motor takes two possible approaches to valuing the dealership, either of which, it says, demonstrates that the value exceeds $75,000. First the dealership is an ongoing concern, generating significant sales, possessing substantial goodwill and a value in excess of $75,000. Second, even if the "value" of Lanham Ford is less than $75,000, the financial impact on Ford Motor of termination of the dealership would exceed $75,000.

The Court finds that the value of the dealership exceeds $75,000. The Court declines to base that value on Lanham Ford's reported net worth. Generally, businesses undervalue intangible assets when calculating net worth in accordance with generally accepted accounting principles. Courts are not bound by these valuations. In one extreme case, for example, a plaintiff company listed the value of all its intangible assets such as patents and goodwill as being worth one dollar for tax purposes. The court stated that "[s]uch fictitious listing and reporting, which are in accordance with almost universally accepted accounting practice, are not admissions on the plaintiff's part that its goodwill is not worth more than one dollar. But even if they were, this court would not be bound by such admissions for the purpose of determining its jurisdiction over the subject matter of the actions." *Gen. Elec. Co. v. Sabreen*, 128 F.Supp. 900, 901 (E.D.Pa.1953).

In another case in which a dealership's net profit was less than the jurisdictional minimum (then $10,000), the court held that the value of the dealership nevertheless satisfied the jurisdictional requirement. *Corwin Jeep Sales & Serv., Inc. v. Am. Motors Sales Corp.*, 670 F.Supp. 591, 596 (M.D.Pa.1986) ("... Corwin's net profit in 1985 was $9,784. While of course

these figures do not establish conclusively the value of Corwin's dealership, we find that in view of these figures it cannot be said to a legal certainty that the respective rights of the parties under the franchise agreement fail to meet the jurisdictional amount requirement.").

Similarly, common sense suggests that a potential buyer of the dealership would set little store by Lanham Ford's negative net worth. Far more likely, the prospective buyer would place a positive value on the dealership's assets and goodwill because these are what would determine the dealership's real potential for future sales. Lanham Ford's financial documents show that in 2002 it had nearly $56 million in total sales. It made over $7 million in gross profit on these sales. In December of 2002, it had total assets of $16,482,315 and over $560,000 in cash or equivalents on hand.

All this suggests to the Court that Ford Motor has demonstrated that the amount in controversy exceeds the $75,000 jurisdictional minimum required under 28 U.S.C. § 1332(a).

### IV.

■ Ford Motor's Motion to Dismiss proceeds on several grounds. Most persuasively, it argues that there is no basis for the "due process" rights to which Lanham Ford claims entitlement.[2] Lanham Ford responds that its right to a fair and impartial hearing before the Policy Board is implicit in the structure of the arbitration process that the Dealer Agreement establishes. If it were not entitled to fully prepare and present its case, says Lanham Ford, the process would be futile. Lanham Ford also argues that Ford Motor has violated the good faith requirement im-

---

**2.** Ford Motor also argues that Lanham Ford is in effect seeking an injunction against the Motor Vehicles Administration proceeding, which is barred by the Anti–Injunction Act. Because the Court decides this case on other grounds, it need not address this argument.

posed by Maryland Code, Transportation, § 15–206.1[3] and that the hearing before the Policy Board was so fundamentally unfair that its decision is invalid under the Maryland Uniform Arbitration Act, Md. Code Ann. § 3–201, et seq.

The Court is unmoved by Lanham Ford's argument. The Dealer Agreement does not provide for any particular "due process" rights, stating simply that:

> Any protest, controversy or claim by the Dealer ... with respect to any termination or nonrenewal of this agreement by [Ford] ... shall be appealed by the Dealer to the Policy Board within fifteen (15) days after the Dealer's receipt of notice of termination or nonrenewal ... Appeal to the Policy Board shall be a condition precedent to the Dealer's right to pursue any other remedy available under this agreement or otherwise available under law.

The Agreement makes no mention of what rights exist with regard to the appeal. Moreover, the Policy Board handbook provides that "all proceedings of the Board are informal" and that the Policy Board is not obligated to provide any information requested by the Dealer unless "the Board has agreed to provide it." The record demonstrates that Ford Motor complied with these minimal procedures. The Court is not at liberty to require Ford Motor to do more. *See, e.g., Suburban Hospital, Inc. v. Dwiggins,* 324 Md. 294, 596 A.2d 1069, 1077 (1991) ("Unless some public policy is implicated, employee grievance mechanisms should be analyzed only for what they offer; they must not be seen automatically as quasi-judicial forums for final and impartial dispute resolution gov-erned by standards of due process and neutral fairness.").

Nor has Ford Motor acted in violation of any statutory requirement of good faith. In general, a duty of good faith does not "interpose new obligations about which [a] contract is silent, even if inclusion of the obligation is thought to be logical and wise." *E. Shore Mkts. Inc., v. J.D. Assoc. Ltd. P'ship.,* 213 F.3d 175, 184 (4th Cir. 2000). Good faith requires only that "one party to a contract not frustrate the other party's performance." *Id.* Ford Motor did not prevent Lanham Ford from exercising its right under the Dealer Agreement to appeal the proposed termination of its Dealer Policy Board. To the extent that Ford Motor may not have provided due process-like procedures, no breach of good faith is involved. Nothing in the Dealer Agreement obliges Ford Motor to provide such procedures.

■ The Maryland Uniform Arbitration Act has no relevance here. The Policy Board hearing was not an arbitration and is not governed by the Act. The Maryland Court of Appeals has defined an "arbitration award" as a "decision of an extra-judicial tribunal which the parties themselves have created, and by whose judgment they have mutually agreed to abide." *Chillum–Adelphi Volunteer Fire Dep't v. Button & Goode, Inc.,* 219 A.2d 801, 806, 242 Md. 509, 516 (Md.1966) (quotations omitted). The Dealer Agreement provides that "[a]ny decision of the Policy Board shall be binding on [Ford] but shall not be binding on the Dealer." Since Lanham Ford was not bound by the Dealer Policy Board's decision, it cannot fairly be

---

**3.** Section 15–206.1 provides:

"Good Faith

(a) Defined.—In this section, "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

(b) Required.—A manufacturer, distributor, or factory branch, whether directly or through an agent, employee, or representative, may not fail to act in good faith."

deemed an "arbitration award." Indeed, the Agreement provides for a separate arbitration proceeding if the Dealer is unsatisfied with the decision of the Dealer Policy Board. This is the clearest indication that the Policy Board hearing was not an arbitration.

Summing up, however minimal the Policy Board's procedures may have been, however informal the hearing before the Board may have been, Ford Motor complied with all procedures agreed upon by the parties. The Court cannot require Ford Motor to do more. Accordingly, Ford Motor's Motion to Dismiss will be GRANTED.

A separate Order follows implementing this Opinion.

### FINAL ORDER OF JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is this 23rd day of June, 2003,

ORDERED:

1) Lanham Ford's Motion to Remand (Paper No. 10) is **DENIED**;

2) Ford's Motion to Dismiss (Paper No. 6) is **GRANTED**;

3) Final Judgment is **ENTERED** in favor of Defendant Ford and against Plaintiff Lanham Ford;

4) The Clerk of the Court shall **CLOSE** this case; and

5) The Clerk of the Court shall **MAIL** copies of this Order to counsel for both parties.