## SUNBEAM CORP. v. WENTLING.

No. 10280.

United States Court of Appeals Third Circuit.

Argued Nov. 10, 1950.

Filed Dec. 8, 1950.

Rehearing Denied Jan. 5, 1951.

2. Cassen v. Cassen, 211 Ark. 582, 201 S.W.2d 585.

904

Jefferson C. Barnhart, Harrisburg, Pa. (McNees, Wallace & Nurick, Harrisburg, Pa., on the brief), for appellant.

William H. Peace, 2d Philadelphia, Pa. (Ira Jewell Williams, Jr., Thomas Raeburn White, and Ira Jewell Williams, all of Philadelphia, Pa., Herman T. VanMell, Chicago, Ill., on the brief), for appellee.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal involves the application of the Pennsylvania Fair Trade Act.[1] The plaintiff, a manufacturer of electric shavers, complained of violation of the Act by the defendant, an individual retailer doing a mail order business from headquarters in Palmyra, Pennsylvania. The plaintiff claimed, and the defendant does not deny,

1. Act of June 5, 1935, P.L. 266, as amended June 12, 1941, P.L. 128, 73 Purdon's, Pa.Stat. Ann. §§ 7 and 8.

that the defendant advertised and sold some of the plaintiff's razors at a price lower than the so-called fair trade price. The District Court granted relief in very broad terms.[2]

The defendant conducts a mail order business. He advertises merchandise in publications of national circulation[3] and invites orders for the articles advertised. These articles he ships by mail or express to the buyers. What portion of the defendant's sales results in shipments to Pennsylvania buyers and what portion results in shipments to out-of-state buyers is not disclosed.

The defendant has signed no contract agreeing to maintain a minimum price on plaintiff's razors. But the plaintiff claims that it is entitled to relief under the non-signer provision of the statute which states: "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity." 73 Purdon's Pa.Stat.Ann. § 8.

The case involves several points which we shall consider one at a time.

(1) The constitutionality of fair trade legislation under the United States Constitution and that of the Commonwealth of Pennsylvania with regard to due process and equal protection provisions.

■ This need not detain us long. Similar legislation was pronounced not violative of the federal Constitution in Old Dearborn Distributing Company v. Seagram-Distillers Corporation, 1936, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. The plaintiff suggests that the depression conditions which prompted that result in 1936 no longer obtain and if the case now came to the Supreme Court it would be decided the other way. Perhaps so; perhaps not. We think, however, the Supreme Court decision settled the constitutionality of the Fair Trade acts so far as due process and equal protection under the Fourteenth Amendment are concerned. We should and do follow it so long as it stands as a declaration of law by the Supreme Court.

■ Nor do we need to take long in holding the Pennsylvania statute free from attack on the due process or equal protection clauses of the Pennsylvania Constitution, P.S.Const. Art. I, §§ 1 and 9; Art. III, § 7. It is true that the Pennsylvania Supreme Court has not passed, in so many words, on the constitutionality of the Act under the Pennsylvania Constitution. But it has applied it, apparently without question of its constitutionality.[4] A Common Pleas Court of Philadelphia has definitely declared it to be constitutional.[5] And the overwhelming weight of decision in other state courts is to the same effect.[6] Whatever may be the wisdom of this legislation we think it well established that legislatures, in enacting it, are not violating the provisions of the United States Constitution as to due process, or equal protection, or the state constitutional equivalents thereof.

■■ (2) The Miller-Tydings Act. This statute[7] was much discussed by both parties

2. Defendant was "permanently enjoined and restrained from committing further acts of unfair competition in relation to Fair Trade marked products of plaintiff, Sunbeam Corporation, and from violating said plaintiff's fair trade agreements * * *." In the course of its opinion the District Court states, "that trademark must be kept inviolate whether the sale is intrastate or interstate." Sunbeam Corp. v. Wentling, D.C.M.D.Pa. 1950, 91 F.Supp. 81, 86.

3. The advertisements of which defendant complains appeared in two nationally circulated magazines, The American Rifleman and Field and Stream, and in the November 28, 1948, issue of the Boston Sunday Advertiser.

4. Lentheric, Inc., v. F. W. Woolworth Co., 1940, 338 Pa. 523, 13 A.2d 12.

5. Welch Grape Juice Co. v. Frankford Grocery Co., 1939, 36 Pa.Dist. & Co. 653.

6. Since the Seagram case the acts have been held unconstitutional in only one state, Liquor Stores, Inc., v. Continental Distilling Corp., Fla.1949, 40 So.2d 371. For a list of cases in which the various acts have been passed upon see 2 CCH-Trade Reg. Service § 7128.

7. 26 Stat. 209 (1937), 15 U.S.C.A. § 1.

at the argument. We think the statute was intended to relieve persons entering into contracts of the type provided for in these fair trade acts from liability under United States anti-trust laws.[8] The legislation was necessary, if such immunity was to be had, because price maintenance agreements had previously been held to be a violation. Dr. Miles Medical Company v. John D. Park & Sons Company, 1911, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (Sherman Act); FTC v. Beech-Nut Packing Co., 1922, 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (Federal Trade Commission Act). But the Miller-Tydings Act in no way, we think, affects any question of defendant's liability to plaintiff.

In this regard the case of Whitfield v. State of Ohio, 1936, 297 U.S. 431, 56 S.Ct. 532, 534, 80 L.Ed. 778 presents an interesting parallel. In the Hawes-Cooper Act, 49 U.S.C.A. § 60, Congress authorized the states to regulate the sale of prison-made goods even though manufactured in another state and sold within the state in the original package. Ohio had forbidden the sale of such goods in open market and defendant was convicted of violation of the statute. The information involved contained two counts, one based on a sale within Ohio, the other on a sale to an Ohio buyer from an Alabama seller. The Court stated[9] that "A serious question as to the infringement of the commerce clause of the Constitution is presented by the second count * * *," but found it unnecessary to pass on this since the conviction was sustained by the first count which was valid because of the Hawes-Cooper Act. Thus, even though Congress had expressly left the field to state regulation, the Court intimated Congress either had not or could not authorize the states directly to regulate an interstate sale. The case is not controlling here, but is an indication that we should be wary of interpreting the Miller-Tydings Act as anything more of an authorization to the states than the words require.

(3) Application of the statute to interstate transactions.

 Some at least of the defendant's business is interstate commerce. That point seems to us abundantly clear, but since the parties seemed to have some dispute about it we will stop on it for a moment. First, the purchase of advertising space in a publication published in another state and of national circulation is interstate commerce.[10] Likewise, when defendant receives an order from outside Pennsylvania for an article which he fills by mailing it or sending it by express from Palmyra to a point in another state a transaction in interstate commerce has taken place. It is immaterial, so far as this point is concerned, whether "title" passes at the place of shipping or at destination.[11] The shipment would be equally an interstate matter if no passing of title were involved in the trans-

8. In Schwegmann Brothers v. Calvert Distillers Corp., 5 Cir., 1950, 184 F.2d 11, 15, the court states that the Miller-Tydings amendment "neither authorizes nor prohibits state legislation. * * * It is concerned with, and only with, the Sherman Act, legislation by Congress affecting interstate commerce."

9. Whitfield v. State of Ohio, supra, 297 U.S. at page 437, 56 S.Ct. at page 534.

10. To the extent that Blumenstock Bros. Advertising Agency v. Curtis Publishing Co., 1920, 252 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649, can be construed as holding to the contrary we think it is no longer authoritative in the light of more recent cases. United States v. South-Eastern Underwriters Ass'n, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; North

American Co. v. Securities and Exchange Comm., 1946, 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945. Cf. Indiana Farmers Guide Co. v. Prairie Farmers Pub. Co., 1934, 293 U.S. 268, 55 S.Ct. 182, 79 L.Ed. 356; Charles A. Ramsay Co. v. Associated Bill Posters of United States and Canada, 1923, 260 U.S. 501, 43 S.Ct. 167, 67 L.Ed. 368; Post Printing & Pub. Co. v. Brewster, D.C.Kan.1917, 246 F. 321; State v. Salt Lake Tribune Pub. Co., 1926, 68 Utah 187, 249 P. 474, 48 A.L.R. 553.

11. Uniform Sales Act § 19, Rule 5. Act of May 19, 1915, P.L. 543 § 19, 69 Purdon's Pa.Stat.Ann. § 143. Since defendant pays the cost of transportation, including insurance against loss, the presumption is that the "sale" takes place outside Pennsylvania as to out-of-state customers.

action. For instance, if A, in Pennsylvania, sends a Sunbeam Shavemaster to his friend in New York as a loan no passing of "title" is involved. But the shipment is certainly interstate commerce.

▮ To state that defendant's business is interstate commerce does not answer the question of the applicability of a Fair Trade Act to such commerce. It is well settled that in the absence of an occupation of the field by Congress a state may regulate some aspects of interstate commerce.[12] But it is just as well settled that even in the absence of Congressional action the commerce clause is a limitation on the power of states to regulate interstate commerce. A state may not regulate the rates [13] or length [14] of trains even on the intrastate portion of an interstate journey; it may not prohibit the importation into the state of liquor from another state,[15] nor prohibit its sale by one who purchased it from a seller in another state and while still in the original package; [16] it cannot restrict the export or import of goods for the protection of local economic interests.[17] As Professor Rottschaefer puts it, "One aim

of the commerce clause was the protection of interstate trade against state interference. As a limit on state powers, it is a free trade charter for national commerce." [18]

As in so many Constitutional questions the line between permissible and prohibited state regulation is not a clear one. Chief Justice Stone, in Southern Pacific Co. v. State of Arizona, 1945, 325 U.S. 761, 770, 65 S.Ct. 1515, 1521, 89 L.Ed. 1915, voiced what is apparently the presently accepted approach.[19] He said that "There has thus been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern. * * * the matters for ultimate determination are * * * whether the relative weights of the state and national interests involved are such as to make inapplicable the rule, generally observed, that the free flow of interstate com-

---

12. Cooley v. Board of Wardens, 1852, 12 How. 299; California v. Thompson, 1941, 313 U.S. 109, 113, 61 S.Ct. 930, 85 L.Ed. 1219; California v. Zook, 1949, 336 U.S. 725, 69 S.Ct. 841, 93 L.Ed. 1005.

13. Wabash, St. Louis and Pacific Ry. v. Illinois, 1886, 118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244.

14. Southern Pacific Co. v. State of Arizona, 1945, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915.

15. Bowman v. Chicago & N. W. Ry. Co., 1888, 125 U.S. 465, 8 S.Ct. 689, 31 L.Ed. 700. The Webb-Kenyon Act, 37 Stat. 699 (1913), 27 U.S.C.A. § 122, now prohibits the interstate transportation of intoxicants into any state for use thereof in violation of its laws. It was upheld in Clark Distilling Company v. Western Maryland Railroad Co., 1917, 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326. See McGovney, The Webb-Kenyon Act and Beyond, 3 Iowa L.Bulletin, 145 (1917).

16. Leisy v. Hardin, 1890, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128. As to intoxicating liquor the rules were changed by the Wilson Act, 26 Stat. 313 (1890), 27 U.S.C.A. § 121 which authorized the states to prohibit the resale of liquor.

This Act was said to deprive intoxicating liquor of its interstate commerce character.

17. H. P. Hood & Sons v. DuMond, 1949, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865; Baldwin v. G. A. F. Seelig, Inc., 1935, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032; Com. of Pennsylvania v. State of West Virginia, 1923, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117.

18. Rottschaefer, The Constitution and Socio-Economic Change, 102 (1948). The same idea was forcibly stated by Mr. Justice Jackson thus, "The material success that has come to inhabitants of the states which make up this federal free trade unit has been the most impressive in the history of commerce, but the established interdependence of the states only emphasizes the necessity of protecting interstate movement of goods against local burdens and repressions." H. P. Hood & Sons v. DuMond, 1949, 336 U.S. 525, 538, 69 S.Ct. 665.

19. For an excellent and up-to-date discussion of this problem see Dowling, Constitutional Law, Significant Developments in the Law During the War Years, 9 (Practising Law Institute Series, 1948).

merce and its freedom from local restraints in matters requiring uniformity of regulation are interests safe guarded by the commerce clause from state interference."

It is not difficult to put a case in which non-uniform state laws in this price regulation field will result in a complete block to trade between states in "fair traded" commodities. Here is one. There is no requirement that the established fair trade price be uniform throughout the states.[20] Thus, we have the possibility of a situation where, for instance, the fair trade price of an article has been fixed in Pennsylvania at $1 and in South Carolina at 75 cents. If the Pennsylvania statute is permitted to govern interstate sales, no sales in that commodity can be made by Pennsylvania sellers to South Carolina buyers. If the Pennsylvania seller were to meet the competition of South Carolina sellers, he would commit a tort in Pennsylvania, and yet he would be selling at the very price set in South Carolina as "fair trade." Further, if a state may regulate the price at which an article must be sold if it is to be shipped out of the state, may it not equally well regulate the price for which the article must have been sold before it is allowed to come into the state? Tariff barriers are but feeble obstacles compared with such a blockade on the interstate movement of goods.

The possibility of such a barrier to interstate commerce from non-uniform state regulation illustrates the substantial effect such regulation will have on interstate commerce if applied to interstate sales. Such sales are a fit subject for uniform regulation should Congress desire it, and we see no peculiar local interest which justifies the imposition upon interstate commerce of such restriction by individual states. The local cut-price sale with a loss leader feature, which seems to have constituted a much stressed argument for the legislation, is adequately cared for in giving the statute a local application only.

▇▇▇▇▇ These grave constitutional difficulties involved in any broader interpretation lead us to the conclusion that the Pennsylvania Fair Trade Act is to be construed as not to apply to sales by Pennsylvania retailers to consumers in other states, or to advertisements in publications published in other states. The California court dealing with a statute similar to that of Pennsylvania was so sure of this point that it hardly gave the question discussion and construed the California Fair Trade Act "as applying only to transactions within the state, that being the sole territorial extent of the legislature's powers." Max Factor & Co. v. Kunsman, 1936, 5 Cal.2d 446, 55 P.2d 177, 187. New Jersey has evidently thought the same about its statute.[21] We think a similar construction should be given to the Pennsylvania statute. We are reinforced in this conclusion by the well established line of authority which interprets a statute to conform to constitutional limitations whenever it is possible to do so.[22]

In view of the position we take on this matter a modification of the District Court decree will be necessary. The decree will be vacated and the case remanded to the District Court with directions to enter a decree limiting the injunction against the defendant to intrastate transactions in Pennsylvania, and for further proceedings not inconsistent with this opinion.

---

20. The Acts of 30 states authorize a minimum price, whereas the others provide for an absolute price; in 24 states a person other than the owner of the trademark may establish the price, in 21 any other person may not; in 29 states obliteration of the trademark exempts the commodity from the Act, in 13 it does not. For a compilation of these and other variations see 2 CCH-Trade Reg. Service §§ 7011–13.

21. Johnson & Johnson v. Weissbard, 1937, 121 N.J.Eq. 585, 586, 191 A. 873. For a general discussion of the problem and a conclusion similar to that reached here, see 2 CCH-Trade Reg. Service § 7308.

22. See Kovacs v. Cooper, 1949, 336 U.S. 77, 85, 69 S.Ct. 448, 93 L.Ed. 513; Alabama State Federation of Labor v. McAdory, 1945, 325 U.S. 450, 470, 65 S.Ct. 1384, 89 L.Ed. 1725; Arizona Employers' Liability Cases, 1919, 250 U.S. 400, 430, 39 S.Ct. 553, 63 L.Ed. 1058; United States v. Weisenbloom, 2 Cir., 1949, 168 F.2d 698, 700.