**BISSELL CARPET SWEEPER COMPANY, Appellant,**

v.

**MASTERS MAIL ORDER COMPANY OF WASHINGTON, D. C., Inc., Appellee.**

No. 7250.

United States Court of Appeals Fourth Circuit.

Argued Nov. 12, 1956.

Decided Jan. 7, 1957.

J. Cookman Boyd, Jr., Baltimore, Md. and Gilbert H. Weil, New York City, (Alfred T. Lee, New York City, on the brief), for appellant.

Norman Diamond, Washington, D.C., (Thurman Arnold, Washington, D. C., James Robert Miller, H. R. & J. R. Miller, Silver Springs, Md., and Arnold, Fortas & Porter, Washington, D.C., on the brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and HOFFMAN, District Judge.

SOPER, Circuit Judge.

The question for decision on this appeal is whether the Maryland Fair Trade Act is violated by the advertisement in Maryland of goods sold below fair trade prices in the District of Columbia, which is a free trade jurisdiction.

The Bissell Carpet Sweeper Company is a Michigan corporation and is engaged throughout the United States in the business of manufacturing, selling and distributing carpet sweepers. All of its merchandise bears the company's trademarks for which it has established a valuable name, reputation and good will by the expenditure of large sums of money. Its goods are in free and open competition with carpet sweepers of the same general class manufactured by others. The company has entered into written agreements with dealers and distributors in Maryland and in all other States which have fair trade laws under which the dealers agree not to resell certain merchandise at less than certain specified prices.

Master Mail Order Company of Washington, D.C., Inc., the defendant in the District Court, was a Maryland corporation when the suit was instituted and process was served, but later it was reincorporated under the laws of the District of Columbia. It operates only one business establishment, which consists of a single retail store in the city of Washington where it maintains a stock of merchandise which it offers for sale over the counter and by mail. More than two-thirds of its sales are made over the counter. It advertises and offers for sale Bissell carpet sweepers at prices substantially lower than those specified in the fair trade agreements between Bissell and the dealers and distributors who sell the goods in Maryland and other States. All of the defendant's sales by mail, including sales of Bissell carpet sweepers, have been made to consumers pursuant to orders received directly from them at its Washington store, and all such orders have been filled by direct shipment to purchasers either by mail or by other carriers. It has not advertised or offered carpet sweepers for sale except by mail from or over the counter at its place of business in Washington.

The complaint stated that Masters' advertisement of carpet sweepers for sale at less than fair trade prices was in violation of the Maryland statute and was causing irreparable damage to the plaintiff, in that it tended to impair and destroy the plaintiff's good will; and, accordingly, the complaint prayed the Court to enjoin Masters from advertising, offering for sale, or selling any commodity bearing the plaintiff's name or trademarks at prices less than those stipulated in agreements between Bissell and the retail dealers in Maryland and other fair trade States.

Upon these undisputed facts Masters filed a motion for summary judgment supported by affidavit and the motion was granted by the District Judge on

the ground that the activities described do not violate the Maryland statute. See D.C., 140 F.Supp. 165. The pleadings and affidavit do not explicitly state that the defendant advertised the goods in the State of Maryland, but it was conceded by both parties that such advertisement took place and that the pleadings were intentionally framed to present the question as to whether or not advertising originating in the District of Columbia directed to residents of Maryland and other fair trade States, either by newspaper or by direct mail, offering goods for sale at discount prices only in the District of Columbia is a violation of the Maryland statute, and if so, whether the application of the Maryland statute to such advertising is authorized by the McGuire Act, 15 U.S.C.A. § 45(a)(1)–(5). The factual situation is stated as follows in the appellant's brief:

"Defendant conducts an over-the-counter and mail order business in Washington, D. C., from which it purposefully sends into Maryland advertising materials quoting plaintiff's products at prices less than those which have been duly established by plaintiff in Maryland, and which are observed by retail dealers therein pursuant to that state's fair trade law. In response to such solicitations, Maryland residents are induced, as defendant intends them to be, to order the products by letter addressed to defendant at its place of business in the District. Defendant, in turn, fills such orders by mail, taking particular pains to assure that legal title technically passes in The District of Columbia where no fair trade law exists."

Bissell relies upon the provisions of the Maryland Fair Trade Act, Annotated Code of Maryland, 1951, Article 83, §§ 102 to 110, and particularly upon §§ 102(D), 103 and 107 thereof.

"The applicable portions of the Maryland Fair Trade Act, Annotated Code of Maryland, 1951 Edition, Article 83, are Sections 102(D), 103 and 107, reading as follows:

" 'Sec. 102 * * * (D) "Retailer" means any person selling a commodity to consumers for use.

\* \* \* \* \*

" 'Sec. 103. No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, or the vending equipment from which a commodity is sold to consumer bears, the trademark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced or distributed by others shall be deemed in violation of any law of the State of Maryland by reason of any of the following provisions which may be contained in such contract:

" '(A) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller.

" '(B) That the buyer will require of any dealer to whom he may resell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller.

" '(C) That the seller wil not sell such commodity:

" '(1) to any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will in turn agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or

" '(2) to any retailer, unless the retailer will agree not to resell the same except to consumers for use at not less than the stipulated minimum price.

\* \* \* \* \*

" 'Sec. 107. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of Sections 102–110, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.' "

The purpose of the Act, as stated in the title, Laws of Maryland, 1937, Chapter 239, was to protect trademark owners, producers, distributors and the general public against injurious practices in the distribution of competitive commodities bearing a distinguishing trademark or name through the use of volunteer contracts establishing minimum resale prices. Under § 103 it becomes lawful to make contracts between a producer or distributor and a buyer of trademarked goods, which are in competition with similar commodities produced by others, wherein the buyer agrees not to resell the goods at less than a stipulated minimum price and the seller agrees that he will not sell the goods to any wholesaler unless the wholesaler exacts a similar price agreement from any dealer to whom he resells the goods, and the seller also agrees not to sell the goods to any retailer without a similar price agreement.

The case turns on the interpretation of § 107, which provides that wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in a fair trade contract is unfair competition, whether or not the advertiser or seller is a party to the contract.

The specific question is whether Masters has been guilty of "advertising" goods for less than the minimum price within the meaning of this Act. It is conceded that all of Masters' sales of carpet sweepers took place in Washington and none of them took place in Maryland. It is also conceded that the phrase in § 107, which denounces, as unfair competition, "selling" any commodity for less than the price stipulated in any contract, must refer to sales in Maryland since Maryland would have no right to prohibit a sale at less than fair trade prices outside the State. Nevertheless, it is argued that the statute condemns advertising of discount prices in Maryland no matter where the sales actually take effect. Much is said, much indeed may fairly be said, as to the injury to the business of the producer in the debasement of the trademark by advertising to buyers in Maryland that a few miles away across the border the same goods may be purchased for much less than in their home State. Moreover, it is emphasized that the statute is phrased in the disjunctive, so that it is not necessary to show both sale and advertisement, but only one or the other, in order to establish unfair competition in the State. To construe the Act otherwise, it is said, would render ineffective the policy expressed in the fair trade law of the State which has been approved by the decisions of its higher Court in such cases as Goldsmith v. Mead Johnson & Co., 176 Md. 682, 7 A.2d 176, 125 A.L.R. 1339; Schill v. Remington Putnam Book Co., 179 Md. 83, 17 A.2d 175, 22 A.2d 128; Donner v. Calvert Distillers Corp., 196 Md. 475, 77 A.2d 305.

We agree with the appellant that advertising the sale of a commodity at less than the stipulated fair price is of itself unfair competition within the meaning of § 107 of the Maryland statute, whether or not a sale takes place; but we are satisfied that the advertisement must relate to a sale of goods within the State in order to fall within the condemnation of the statute. All advertisements of merchandise are aimed at the sale of commodities; and so we find, in this instance, that the prohibited acts are listed in a single phrase as "advertising, offering for sale or selling any commodity," and since the prohibition against selling is of necessity confined to Maryland sales, the associated acts of advertising or offering for sale must likewise be concerned with sales within

the State. The appellant interprets the statute as if the phrase were modified so as to read "advertising or offering for sale any commodity at any place or selling it in the State of Maryland." In our view it is far more reasonable, when construing a statute which was enacted to authorize the formation and enforcement of fair trade agreements in the State of Maryland, to interpret the disputed phrase as if it read "advertising, offering for sale or selling any commodity *within the State*."

In reaching this conclusion we are aided by the admonition of the Court of Appeals of Maryland in Venable v. J. Engel & Co., Inc., 193 Md. 544, 69 A.2d 493, where an injunction against a seller was refused who had advertised a fair traded article in such a way that the public might be led to believe that he had cut the price although he had not actually done so. The court said 193 Md. at page 549, 69 A.2d at page 495:

"* * * The Fair Trade Act is in derogation of the general rule of the common law that any person has the right to sell his property at any price that he and the purchaser may agree upon, and the courts should accordingly construe the Act strictly and should not infer that the Legislature intended to change any common-law principle beyond what the Act explicitly provides."

The same interpretation was given to the statute not only in the decision of Judge R. Dorsey Watkins in the District Court, but also by Judge Chesnut in Revere Camera Co. v. Masters Mail Order Co., D.C.Md., 128 F.Supp. 457, 461 and 462.

This conclusion is also fortified by the doubt which arises as to the constitutionality of a statute which seeks to regulate the interstate commerce, which is inherent in advertising on a national scale. See Lorain Journal v. United States, 342 U.S. 143, 151, 72 S.Ct. 181, 96 L.Ed. 162. This doubt is not allayed by the fact that a prohibition of the advertisement of discount prices in Maryland would undoubtedly aid in the protection of the trademark on fair traded commodities. There are many instances in which extraterritorial activities injuriously affect the internal business of a State, but under our system of government it is not always possible for the State to find the remedy. Such a situation was considered by the Supreme Court in Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, in which an attempt was made to enforce a Maryland excise tax on the use in the State of articles which had been purchased in Delaware. The tax was designed to support a Maryland sales tax; and it was brought out that vendors in Delaware reached Maryland inhabitants and induced them to purchase commodities in Delaware for delivery in Maryland whereby the sales tax was avoided. The Court held that the Maryland statute violated the due process clause of the Fourteenth Amendment in so far as it sought to make the Delaware vendor an agent for the collection of the use tax from Maryland purchasers. The situation resembles that now before the Court, in that it involved an attempt to effectuate the purposes of a Maryland statute by controlling the activities of persons beyond the jurisdiction of the State, so that a serious constitutional question cannot be avoided.

The provisions of the McGuire Act do not broaden the scope of the Maryland statute in so far as the advertisement of sales of commodities at less than fair trade prices is concerned. The purpose of the McGuire Act, as stated in 15 U.S.C.A. 45 note, was to protect the rights of the States to regulate their internal affairs and to enable them to enact laws authorizing contracts prescribing minimum prices for the resale of commodities, and to extend the stipulated prices to persons who are not parties to the contracts. To this extent the States were relieved from the prohibitions of the antitrust Acts. To effectuate this purpose § 45(a) (3) of the statute was passed. It furnishes the basis of § 107 of the Maryland Act, in that it makes it lawful for a State to pass a

statute which, in substance, provides that wilfully and knowingly advertising, offering for sale or selling any commodity at less than the prescribed prices is unfair competition and actionable at the suit of any person damaged thereby. The purpose of the Federal statute was served by this grant of authority to the States to pass fair trade statutes and make violations of price agreements unfair competition, and hence it follows that controversies as to the rights of sellers and buyers under these statutes must be resolved by reference to the State statutes themselves. Here again the principle of strict construction applies, for it was held in United States v. McKesson & Robbins, 351 U.S. 305, 316, 76 S.Ct. 937, that Congress has marked the limitations beyond which price fixing cannot go and these limitations must be construed strictly since resale price maintenance is a privilege restrictive of a free economy.

The issue in the pending case therefore reverts to the meaning of the Maryland statute which, in our opinion, was correctly interpreted by the Court below.

Affirmed.