**GENERAL ELECTRIC COMPANY,**
Plaintiff-Appellee,

v.

**MASTERS MAIL ORDER COMPANY OF WASHINGTON, D. C., Inc.,**
Defendant-Appellant.

No. 198, Docket 24370.

United States Court of Appeals
Second Circuit.

Argued Dec. 4, 1956.

Decided May 15, 1957.

**682**

Lumbard, Circuit Judge, dissented.

Norman Diamond, of Arnold, Fortas & Porter, Washington, D. C. (William D. Rogers, of Arnold, Fortas & Porter, Washington, D. C., and Joseph F. Ruggieri, of Ruggieri & Ruggieri, Brooklyn, N. Y., on the brief), for defendant-appellant.

Edgard E. Barton, of White & Case, New York City (Howard J. Aibel, of White & Case, New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN,[1] Circuit Judges.

CLARK, Chief Judge.

This is an appeal from a decision, D.C. S.D.N.Y., 145 F.Supp. 57, enjoining a mail order discount house in the District of Columbia from advertising, offering for sale, or selling plaintiff-manufacturer's products in New York below New York "fair trade" prices.[2] The action was brought under the New York Fair Trade (Feld-Crawford) Act, N. Y. General Business Law, McK.Consol.Laws, c. 20, §§ 369–a to 369–e, and our jurisdiction rests on the diversity of citizenship of the parties. All the facts were stipulated in advance of trial.

Since the passage of the McGuire Act, 66 Stat. 632, 15 U.S.C. § 45(a) (1)–(5), the plaintiff, General Electric Company, has entered into numerous fair trade agreements with retailers in New York and other states and has systematically given notice of the agreements and the uniform minimum resale prices in effect to the 175,000 known retailers of its products. It has vigorously enforced the agreements, by lawsuits when necessary. The defendant is a retail store in the District of Columbia which sells General Electric appliances both over the counter and by mail order. Two-thirds of its sales are over the counter. It is a wholly owned subsidiary of Masters, Inc., a New York retail corporation, and has been controlled and closely supervised by the parent corporation at all relevant times. The parent is not a party here. In 1952 the parent was enjoined from violating the plaintiff's fair trade contracts and the following year it was twice fined for violating the injunction. That year the defendant was organized in Maryland and the following year its place of business was moved to the District of Columbia, where there are no fair trade laws. The last move was intended to permit the defendant to sell General Electric appliances to consumers in fair trade states below fair trade prices by direct mail order, the defendant having been advised that such sales would be legal.

Defendant has shipped General Electric appliances from its store to consum-

1. Judge FRANK heard arguments on this appeal and wrote a memorandum supporting his tentative vote for reversal, but died before he could prepare an opinion. Judge WATERMAN was then invited to, and consented to, serve as the third member of the panel.

2. We use the terms which seem to be current, viz., "fair trade," as opposed to "free trade."

ers in New York at prices below those set by the plaintiff with its signatory retailers. These sales were pursuant to orders received in the District of Columbia on order forms marked, "This Order Is Subject To Acceptance By Masters Mail Order Company In Washington, D. C." and "No Charge For Shipping." Some of the orders were filled on a C.O.D. basis, but the great majority were filled pursuant to orders which were accompanied by prepayment of the purchase price. Each order blank bore the notation "Sold To" immediately preceding the purchaser's name, and as one of the terms it announced that the purchaser could return the article purchased for refund or exchange within thirty days of receipt by returning the article in its original condition and carton. In approximately five cases defendant refunded the purchase price upon the customer's return of the merchandise.

The order blanks were distributed by both the defendant in Washington and its parent, which kept them behind the appliance counter at its place of business in New York for distribution to New York consumers who sought them or tried to buy General Electric appliances for less than fair trade prices. To mail requests for appliances below fair trade prices the New York parent store replied that the items could be purchased from the Washington subsidiary, and it enclosed copies of the mail order form of the defendant. Copies of the defendant's catalogue were printed by the parent in New York and sent to the defendant in the District of Columbia, whence they were mailed to prospective customers in fair trade states. And the parent distributed other advertising material concerning the defendant's bargains directly to New York consumers in New York. The appliances sold by the defendant were acquired in part from the parent in New York and in part through purchase from distributors located in the District of Columbia, including a division of General Electric Supply Company, a wholly-owned subsidiary of the plaintiff, which is one of seven franchised General Electric distributors in the District of Columbia.

The district court, relying heavily on the circumstances surrounding the formation of the defendant and its close supervision by the New York parent, held that the defendant advertised, offered for sale, and sold GE appliances in New York below the fair trade prices; that this violated New York's Feld-Crawford Act; and that the Feld-Crawford Act was sanctioned by the McGuire Act. Judge Bicks' reasoned opinion, reported at 145 F.Supp. 57–64, is a full exposition of the arguments available for plaintiff's position and for the rather far-reaching injunction he issued. He distinguished two earlier district court cases upholding the legality of the defendant's operations in another fair trade jurisdiction on the ground that there no sales had been made within a fair trade state. Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., D.C.D.Md., 140 F. Supp. 165, subsequently affirmed, 4 Cir., 240 F.2d 684; Revere Camera Co. v. Masters Mail Order Co. of Washington, D. C., D.C.D.Md., 128 F.Supp. 457. But we are constrained to agree with these decisions, which we think are not properly to be distinguished.

Our first question is whether the Feld-Crawford Act, so applied, conflicts with the Sherman Antitrust Law's ban on enforcement of resale price maintenance agreements as to goods moving in interstate commerce. Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502. Although the McGuire Act carves some exceptions to this long-standing national policy against restraints on trade, we are "bound to construe them strictly, since resale price maintenance is a privilege restrictive of a free economy." United States v. McKesson & Robbins, Inc., 351 U.S. 305, 316, 76 S.Ct. 937, 943, 100 L.Ed. 1209.

Subsections (a) (2) and (3) of § 2 of the McGuire Act, 15 U.S.C. § 45(a)

(2) and (3), are printed in the margin.[3] The last part of subsection (a) (2) restricts the exception for resale maintenance contracts to contracts governing resales in jurisdictions that have adopted "fair trade" as a policy. A contract made in a fair trade state, but governing a resale in a non-fair trade state, would be illegal by the terms of the subsection. Subsection (a) (3) creates an exception for enforcement actions only when the price-cutter is undercutting "prices prescribed in such contracts"—that is, the contracts described in the previous subsection. Therefore no enforcement action lies unless the resales in question occur in a fair trade state.

This was the construction given the statute by Judge Chesnut in Revere Camera Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D.Md., 128 F.Supp. 457, 462, and by Judge R. Dorsey Watkins in Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D.Md., 140 F.Supp. 165, 178; and see also the opinion of Judge Soper affirming the latter decision, 4 Cir., 240 F.2d 684. This construction is supported by the legislative history of the McGuire Act, carefully detailed in these opinions.

Plaintiff protests that our reading of the statute will allow the District of Columbia to impose its policies on economic activities in New York. But the opposite construction will simply allow New York to dominate the economic activities of the District of Columbia (and other like free trade areas). Since Congress has left the regulation of this part of interstate commerce to the option of the individual states, it is inevitable that when a single transaction affects states with conflicting policies one state or the other must see its policies slighted. We have no clearer guide in choosing the dominant state than the language of the statute itself. The trial judge attempted to weigh the defendant's contacts in New York against its contacts in the District, but this approach has no warrant in the congressional language or legislative history.[4] From all that appears Congress was concerned with the place where resales occurred, rather than the place where the retailer's owner resided and exercised supervision over operations.

Nor do we think that advertisements and offers to sell are to be treated differently from sales themselves. The critical question is still the place of resale, and no enforcement action may be brought for

3. "§ 45. *Unfair methods of competition unlawful; prevention by Commission*
"(a) (1) * * *
"(2) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, or requiring a vendee to enter into contracts or agreements prescribing minimum or stipulated prices, for the resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale.

"(3) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby."

4. Its weakness from a realistic point of view is highlighted by the fact that here more than two-thirds of defendant's sales were made over the counter in its extensive three-story store in the District, while the remaining or mail-order sales were by no means limited to New York customers; witness the two federal cases in Maryland that we have cited which also involve this defendant.

advertising or offering goods for sale below fair trade prices unless the ad or offer contemplated resales in a fair trade jurisdiction. There is a practical advantage to having all three stages of the seamless process of merchandising governed by the same law, and the wording of the McGuire Act suggests that the three are to be handled together. This was the conclusion of Judge Watkins in Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D.Md., 140 F.Supp. 165, affirmed 4 Cir., 240 F.2d 684, noted in 57 Col.L. Rev. 292; and we are in entire agreement with his comprehensive opinion. Hence an enforcement action under the New York statute is valid only if the resales occurred in New York.

The parties disagree as to whether the defendant's order blanks were offers or only advertisements soliciting offers. Plaintiff views them as offers which were accepted when consumers in New York signed them and put them in the mail. Defendant contends that the consumers' actions were the real offers which the defendant accepted in the District. We need not resolve the dispute, since Judge WATERMAN and I are agreed that the place where the contract was made is not controlling. In my view the place where title passed is critical.

The intent of the parties governs the passage of title between them, although statutes and case law provide guides for ascertaining such intent. Here the predominant interest of both the seller and buyers was to take advantage of the absence of resale price maintenance legislation in the District of Columbia. The defendant's history and operations testify to its concern, and its various pieces of advertising brought home the same desire to New York consumers. For example, one of its order blanks announced "discounts on all the 'fair-traded' brands of merchandise that are being sold only at list price in 45 states." Since the parties had the power to determine for themselves where title would pass, they indubitably selected the District of Columbia, where their agreements would be enforceable, rather than New York, where they would not.

Where there is no contrary evidence, the fact that the seller pays the carrier suggests that title is intended to pass when the carrier delivers the goods to the buyer, Uniform Sales Act § 19, Rule 5; but only slight evidence of a contrary intent rebuts the presumption of this rule. Williston, Sales § 279b (Rev.Ed. 1948). Here the cost of transportation was being passed on to the mail order consumer in any event, so that little is to be inferred from the fact that the seller's catalogue price included the cost of transportation, instead of treating it as a separate item which the customer must also prepay. The customers' prepayment of the price is more evidence that title passed before the buyer received the goods, Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 147 F.2d 399, 402, certiorari denied 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982, and the vast bulk of mail order sales were thus prepaid.

But even the C.O.D. sales were made in the District of Columbia, we feel. C.O.D. customers, as well as customers who prepaid, placed their orders on blanks which proclaimed the advantages of sales in the District of Columbia; and they, too, if asked, would have expressed a desire to pass title in a place where it was legal. Nor would the defendant be prejudiced by passing title before payment, for it could retain a seller's lien, entitling it to keep possession of the goods until paid. See Ponder v. Beeler Motor Co., 186 Okl. 88, 96 P.2d 65. Defendant's failure to pay the District of Columbia sales tax is irrelevant to the intent of the parties, since this fact was never communicated to purchasers. Under the defendant's arrangement for doing business, title passed in the District of Columbia. Revere Camera Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D. Md., 128 F.Supp. 457, 462; Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D. Md., 140 F.Supp. 165, 174, affirmed 4 Cir., 240 F.2d 684.

Quite apart from the McGuire Act, the same result is compelled by New York law. Sec. 369–b of New York's Feld-Crawford Act, N. Y. General Business Law,[5] cannot be distinguished from the Maryland Fair Trade Act, which the Court of Appeals for the Fourth Circuit recently construed. Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, 4 Cir., 240 F.2d 684. A unanimous court of appeals agreed with the two district judges earlier construing the Act that it covered only those advertisements and offers which referred to resales in Maryland. This narrow construction was adopted because the statute was in derogation of the common law and imposed a burden on interstate commerce—considerations which would weigh heavily with New York courts, as well, e. g., General Electric Co. v. R. H. Macy & Co., 199 Misc. 87, 95–96, 103 N.Y.S.2d 440, 449, appeal dismissed 278 App.Div. 939, 105 N.Y.S.2d 1003.

Moreover, it seems apparent that New York would apply the substantive law of the District of Columbia to the facts of this case. Whether it regarded the place where title passes as critical (to keep the Feld-Crawford Act consistent with the McGuire Act) or saw the retailer's location as controlling, the result would be the same here. In an action for unfair competition by a manufacturer against a New York retailer engaged in direct mail sales of fair trade items to out-of-state consumers the New York courts have applied New York law without discussing our present problem. Raxor Corp. v. Goody, Sup., 121 N.Y.S.2d 882, affirmed 282 App.Div. 921, 125 N.Y.S.2d 643, affirmed 307 N.Y. 229, 120 N.E.2d 802, certiorari denied Goody v. Raxor Corp., 348 U.S. 863, 75 S.Ct. 88, 99 L.Ed. 680. The

instant case is almost identical except that the retail store is located in the District of Columbia; and there is no reason to suspect that the New York courts, which have been scrupulous to apply principles of comity, would adopt a different conflicts rule here merely in order to govern all multi-state transactions by New York law, e. g., People ex rel. Kirkman v. Van Amringe, 266 N.Y. 277, 194 N.E. 754; Van Voorhis v. Brintnall, 86 N.Y. 18, 40 Am.Rep. 505. The fact that the defendant's owner is located in New York is as irrelevant under the Feld-Crawford Act as under the McGuire Act; the state judges will not distinguish between two mail order houses located in the District of Columbia solely because the owner of one resided in New York and the owner of the other lived in Florida.[6] That construction would invite serious enforcement problems, since service of process on the Florida owner cannot be made in New York on the mere fact of advertisement in New York; and the courts of Florida might refuse to entertain actions for unfair competition under the Feld-Crawford Act on grounds of public policy. See Note, 57 Col.L.Rev. 292, 296.

My brother WATERMAN criticizes use of the concept of title in determining the place of "resale" and suggests that we look instead to the situs of the retailer. The title approach seems required by the congressional language and the case law; in reality it adds precision to the statutory term by drawing upon precedents from the law of sales, e. g., Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, D. C.D.Md., 140 F.Supp. 165, 172, note 12, where Judge Watkins relied on a state case involving passage of title in finding

5. "§ 369-b.  *Unfair competition defined and made actionable*

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair

competition and is actionable at the suit of any person damaged thereby."

6. Florida is one of the twelve states where resale price maintenance legislation has been declared invalid either in whole or in part by the state courts. See 1 CCH Trade Reg.Rep. ¶3,003; Sievert, " 'Fair Trade' Tottering, But Hope Still Lingers," N. Y. World-Telegram and Sun, Feb. 22, 1957.

that the defendant's resales are made in the District of Columbia. I see no difficulty with this construction, but am convinced that the novel retailer-situs rule would introduce much uncertainty into the law. For example, it would be difficult to know how much paraphernalia a seller must have in a state to be "located" there. Similarly, it would be hard to fix the "location" of a large mail order house which has numerous warehouses and retail outlets in both free trade and fair trade states.

The criticisms of the construction here employed are two: that it facilitates evasion of fair trade regulation and that it may create inconsistencies between the McGuire Act and the state fair trade laws. Obviously some manipulation is possible under both approaches. The one here adopted would permit no more latitude than the familiar doctrine that parties to a multi-state contract can agree as to which state's law will govern, provided the state selected has a direct and substantial relation to the transaction. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123; 6 Corbin on Contracts § 1509 (1951). Of course the parties, under well recognized principles set forth in more detail in the footnote, are limited in their choice of law as to the passage of title, and cannot elect to be governed by the law of some jurisdiction with which they have no connection.[7] Consequently any fear that New York retailers and consumers

can subject local sales to foreign fair trade laws is groundless. Inasmuch as Judge Watkins has already read the title concept into the federal and Maryland statutes in Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D.Md., 140 F. Supp. 165, and the only possibly contrary authority is Raxor Corp. v. Goody, supra, where the law of the forum was applied without discussion, it seems most likely that uniformity will come about as the state courts read the title concept into their statutes to make them agree with the federal act from which their validity is derived. Congressional disapproval of Sunbeam Corp. v. Wentling, 3 Cir., 185 F.2d 903, vacated 341 U.S. 944, 71 S.Ct. 1012, 95 L.Ed. 1369, does not bear on the present controversy nor does it lend support to the retailer-situs construction.

Because Judge FRANK died before casting his final vote, his views on this case are not official; but it is reassuring that his memorandum and tentative vote agreed so closely with the views I have expressed in calling for reversal on both state and federal grounds and in suggesting that we might reverse on the "persuasive and exhaustive" district court opinions in Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D.Md., 140 F. Supp. 165, and Revere Camera Co. v. Masters Mail Order Co. of Washington, D. C., supra, D.C.D.Md., 128 F.Supp. 457. In accordance with these views the

---

7. "[T]he parties may elect between the different systems of law, which the law would construe as competing systems; but they cannot elect the law of any other jurisdiction." 6 Page, Law of Contracts § 3571. "The courts have * * * generally confined the parties in their choice of law either to the law of the place of making or to the law of the place of performance." 2 Beale, Conflict of Laws 1081. "It is almost universally held that the parties, in exercising the power to select the jurisdiction whose law they intend to have control the obligations, rights, and duties under their contract, must act in good faith and with no purpose of evasion or of avoiding some provision of the law of the place of making." Owens v. Hagenbeck-Wallace Shows Co., 58 R.I.

162, 192 A. 158, 164, 112 A.L.R. 113. See also E. Gerli & Co. v. Cunard S.S. Co., 2 Cir., 48 F.2d 115; Brierley v. Commercial Credit Co., 3 Cir., 43 F.2d 730, certiorari denied 282 U.S. 897, 51 S.Ct. 182, 75 L.Ed. 790; Palmer v. Chamberlin, 5 Cir., 191 F.2d 532, 536, 27 A.L.R. 2d 416; Duskin v. Pennsylvania-Central Airlines Corp., 6 Cir., 167 F.2d 727, 730, certiorari denied Pennsylvania-Central Airlines v. Duskin, 335 U.S. 829, 69 S.Ct. 56, 93 L.Ed. 382; In re Sik's Estate, 205 Misc. 715, 129 N.Y.S.2d 134; Annotation, Validity and effect of stipulation in contract to the effect that it shall be governed by the law of a particular state which is neither the place where the contract is made nor the place where it is to be performed, 112 A.L.R. 124.

order of injunction must be reversed and the action must be dismissed on the merits.

WATERMAN, Circuit Judge (concurring).

I concur in the result reached by Judge CLARK. With him I hold that New York's Feld-Crawford Act is unenforceable against Masters Mail Order Company of Washington, D. C., Inc., the defendant here. Masters is located in the District of Columbia where there is no resale price maintenance statute, law, or public policy. The prices Masters receives for goods sold by it to New York purchasers, being goods shipped in interstate commerce, are, I believe, governed by the public policy of the District of Columbia, the state where Masters is located. That policy permits free-pricing. The public policy of New York that restrains free-pricing in favor of agreements of resale price maintenance I hold is inapplicable to retail transactions of sale made in interstate commerce by this District of Columbia retailer; for I believe that for the purposes of the McGuire Act, 15 U.S.C.A. § 45(a), all such sales take place in the District of Columbia. I reach this conclusion from my reading of the McGuire Act and my understanding of the intent of Congress in passing that legislation. Hence, although Judge CLARK and I agree in reversing the lower court, I differ somewhat from him in reaching that decision.

In enacting the McGuire Act, 15 U.S. C.A. § 45(a), the Congress indicated its intention to leave the adoption or rejection of resale price maintenance to the individual states. The states' rights basis of this legislation clearly appears in the preamble of the Act:

"That it is the purpose of this Act to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws, and to adopt policies, which authorize contracts and agreements · prescribing mini-mum or stipulated prices for the resale of commodities and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. It is the further purpose of this Act to permit such statutes, laws, and public policies to apply to commodities, contracts, agreements, and activities in or affecting interstate or foreign commerce." 15 U.S.C.A. § 45 note.

To carry out this purpose, the McGuire Act provides that the applicable state law shall be that " * * * in effect in any State, Territory, or the District of Columbia in which such resale is to be made * * * " I think we must interpret this language in a way that will most effectively implement the intent of Congress to permit the individual states to adopt or reject "fair-trade" laws and then to enforce those laws in the event of their adoption. We should not interpret the language to permit the policy of more than one state to affect the transaction of sale; or to permit parties to the sale to "contract out" of the applicable state law or to "pick a state law" to suit their convenience. Since the place of resale is not defined by the Act, if we construe that phrase to mean the place where the seller of the goods is located, we obtain the certainty we seek consistent with the intent of Congress to preserve the rights of individual states to regulate in this field, and we do so by an interpretation clearly reasonable from the language of the Act.

I find support for my position in the legislative history of the McGuire Act. During the debates in Congress preceding its enactment, Congressman Cole of Kansas offered an amendment allegedly designed to protect retailers located in fair-trade states from competition from outside those states, and to prevent "raids on the part of mail order houses and cut rate retailers and wholesalers in non-fair-trade states." 98 Cong.Rec. 4952 (1952). That amendment, insofar as here relevant, provided:

"Whenever by contract or agreement described in subsection (2) a stipulated or minimum resale price may be established for a commodity in any State, Territory, or the District of Columbia, where such a contract or agreement is lawful, it shall be an act of unfair competition, actionable at the suit of any person damaged thereby, to wilfully and knowingly, in interstate commerce (1) sell or (2) have transported for sale or resale or (3) *deliver pursuant to a sale, or otherwise deliver,* such commodity in any such State, Territory, or the District of Columbia, where such a contract or agreement is lawful, at less than the price or prices so established in such contract or agreement." 98 Cong.Rec. 4952 (1952) (Emphasis added.)

This amendment was vigorously opposed by Congressman Patman of Texas, who pointed out that a retailer located in a free-pricing jurisdiction like Texas would be prevented from selling to nearby customers who resided in a fair-trade state at less than the fair-trade prices maintained in the latter jurisdiction. 98 Cong.Rec. 4953 (1952). Such interference with the pricing policy of a retailer located in a free-pricing jurisdiction would be "entirely contrary to the [States' right] concept we have in advocating the McGuire bill." The Cole Amendment, he pointed out, would place "a burden upon the merchants in those States where they have no fair-trade law."

The Cole Amendment was rejected by the House of Representatives, which passed the McGuire Act in its present form. 98 Cong.Rec. 4956 (1952). However, in addition to criticism such as that of Congressman Patman, many Congressmen apparently opposed the Cole Amendment because it created a

federal cause of action. See, *e. g.,* remarks of Congressman Harris, of Arkansas, 98 Cong.Rec. 4954 (1952). Hence the defeat of that Amendment can be explained on several grounds. Nevertheless, the absence of the controversial phrase, "(3) *deliver pursuant to a sale, or otherwise deliver,*" quoted above, is support for my belief that the Congress intended that a retailer should be governed only by the fair-trade law of the jurisdiction in which he is located.[1]

I also find authority for my position in court decisions. Prior to the passage of the McGuire Act, the Third Circuit had held that a resale by a retail mail order house located in Pennsylvania was not exempt from the Sherman Act, 15 U.S.C.A. § 1 et seq., and therefore not within the reach of the Pennsylvania fair-trade law, if the resale was to a customer residing outside Pennsylvania. Sunbeam Corp. v. Wentling, 3 Cir., 1950, 185 F.2d 903. When Congress created the McGuire Act, it indicated that one of its express purposes was to "overrule" the Wentling decision, and to permit the individual states to apply their fair-trade laws to interstate shipments such as those involved in Wentling. See H.R.Rep. 1437, 82d Cong., 2d Sess. 6 (1952) And subsequent to the passage of the McGuire Act several courts have held that interstate shipments are within the reach of the fair-trade law of the state where the seller is located, thereby implying that the resale contemplated by the McGuire Act takes place in that state. See, e. g., General Electric Co. v. Masters, Inc. (Raxor Corp. v. Goody), 1954, 307 N.Y. 229, 120 N.E.2d 802 certiorari denied, 348 U.S. 863, 75 S.Ct. 88, 99 L. Ed. 680; Sunbeam Corp. v. MacMillan, D.C.D.Md.1953, 110 F.Supp. 836.

To also permit the state of ultimate destination where the consumer resides to apply its fair-trade law to such inter-

[1] This phrase was separable from the provisions of the Cole Amendment providing for a federal cause of action. Being so separable, it could easily have been inserted in the McGuire Act which leaves enforcement to the several states. It is a fair conclusion, therefore, that in situations where the transaction is in interstate commerce Congress did not intend to permit the state in which the goods are delivered to be able to enforce its local resale price maintenance statute.

state transactions as those now before us would logically require a holding that under the McGuire Act a resale can take place in *two* jurisdictions. It is my belief that the Congress did not intend that New York State can enforce its Feld-Crawford Act both against resident sellers, as has been done in Raxor Corp. v. Goody, and also against a nonresident seller as by the decision below. For such an anomalous result I find no authority in the language or history of the McGuire Act. In fact, its somewhat equivocal legislative history tends to support the opposite conclusion, that the seller is subject to the applicable law of but one state. See 98 Cong.Rec. 4952–54 (1952); Revere Camera Co. v. Masters Mail Order Co., D.C.D.Md.1955, 128 F. Supp. 457, 463; Bissell Carpet Sweeper Co. v. Masters Mail Order Co., D.C.D.Md. 1956, 140 F.Supp. 165, 170–178, affirmed 4 Cir., 1957, 240 F.2d 684.

In view of my understanding of the McQuire Act, I do not find that the New York Feld-Crawford Act has any applicability to the situation before us here. Congress, in passing the McGuire Act, exempted resale price maintenance agreements from the coverage of the federal anti-trust laws by permitting the individual states to enact fair-trade legislation. But that exemption can be availed of only by the state that the McGuire Act designates as the state of resale, *i. e.*, the state where the retailer is located. Hence the New York Feld-Crawford Act, in my judgment, cannot be enforced against this defendant, located in the District of Columbia, on the facts in this case; and, as pointed out by Judge CLARK, the fact that the defendant is owned by a resident of New York State does not make that Act any more applicable to it than if the defendant were owned by a resident of some other state.

And I agree with Judge CLARK that the New York contacts of the defendant stressed by the trial court also are irrelevant to our problem of construing the McGuire Act. Nor do I see any reason for treating the defendant as a mere

dummy corporation for its New York parent. The defendant conducts an extensive retail business in Washington and must be regarded as a separate corporate entity selling the plaintiff's merchandise in that jurisdiction.

Judge CLARK interprets the language of the McGuire Act to make the resale price maintenance statute, if any, of the state where the title passes to goods sold in interstate commerce the only state statute applicable to the transaction. Such an interpretation of that Act permits sellers and buyers to "pick their own law," despite the law of the state where one or both of them may be located.

Clearly a sale or contract of sale can be made in one place and passage of title to the goods being sold may occur elsewhere. Moreover, the place where, or the time when, the title passes can be arranged at the will of the parties. Thus under the approach adopted by Judge CLARK it would be possible, despite Raxor v. Goody, supra, for a seller located in a fair-trade jurisdiction to avoid the application of the fair-trade law of that state by arranging for title to pass in a non-fair-trade jurisdiction where the buyer was located. Or by agreement of the parties, even though both seller and buyer reside in the same or in different fair-trade jurisdictions, title to the goods being sold can be arranged to pass in a free-pricing jurisdiction if the jurisdiction chosen has a direct and substantial relation to the transaction.

Judge CLARK would point out that if my interpretation of the McGuire Act is adopted it will be difficult in future cases "to know how much paraphernalia a seller must have in a state to be 'located' there." Surely, realistic criteria for determining the location of a retailer will logically develop as the future cases may require that development. I would here hold only that *this* defendant-retailer is located within the District of Columbia and therefore beyond the reach of the fair trade law of New York. That is the issue before us to decide.

LUMBARD, Circuit Judge (dissenting).

I dissent for the reasons so well stated by Judge Bicks below, D.C.S.D.N.Y.1956, 145 F.Supp. 57. The sales complained of took place in New York and New York may prohibit them. Accordingly the district court had the power and the duty to enjoin these New York sales, offers to sell and advertising.

Masters, Inc. of New York has frequently been before the New York courts for violation of the Feld-Crawford Act. In 1952, Masters, Inc. was enjoined from selling General Electric appliances below fair-traded prices, Sup., 122 N.Y.S.2d 14, and in 1953 was fined twice for violating the injunction. Not long thereafter, it set up in the District of Columbia (the nearest Metropolitan area without Fair Trade laws) a store which was separately incorporated, although wholly owned and controlled by Masters, Inc.

Despite the formal corporate separation, Masters, Inc. used the facilities of both the New York and Washington stores to exploit the New York market.[1] Thus, Masters, Inc. widely advertised that although it could not sell General Electric appliances at its New York store, it could and would sell them by mail order from Washington, D. C. When customers sought to buy the appliance at the New York store, they were again informed that the appliances could be obtained at the Washington store and order blanks were provided in New York; moreover the advertising mailed by Masters Mail Order of Washington, D. C., although posted in Washington, was prepared in New York from the mailing lists and other facilities of the New York office.

It seems to me that it would be difficult to imagine a clearer case of evasion of the New York law. Regardless of how we ought to treat the wholly independent out-of-state mail order house, it seems to me, with all due deference to my brethren, that that is not the case before us. Insofar as the sales in question are concerned, the many contacts with New York establish that for all practical purposes the Masters organization is in the same position as a New York seller with an out-of-state warehouse and office staff. If we ignore that, and look only to such easily arranged formalities as separate incorporation, title passage and where the article is mailed, we merely facilitate the emasculation of fair trade by any discount house large enough to be able to afford such arrangements.[2] These formalities may be material in other contexts, but they should not be given controlling significance here.

We must not forget that Congress has twice indicated—the second time despite strong opposition—that the states are to be allowed to prevent price-competition among those selling branded products in the home market. See H.R.Rep. No. 1516, 82d Cong. 2d Sess. (1952). This was to avoid damage to the good will of the manufacturer in the eyes of local consumers and to protect local small businessmen against the price-cutting powers of the large firms. See id. at 12,

1. Masters Mail Order of Washington, D. C. did most of its business in across the counter sales, but I think that that is immaterial to the issues before us since our concern is only with the substantial mail-order sales to the New York market.

2. Stress on title passage seems to me to be particularly unfortunate for that would allow even a wholly in-state retailer to evade his state's fair trade law when selling to an out-of-state consumer by merely arranging that title pass in a free-trade state with some relevant contacts.

10. The defendant's activities have frustrated and will continue to frustrate both purposes in the New York market unless they are enjoined.[3]

3. Bissell Carpet Sweeper Co. v. Masters Mail Order Co. of Washington, D. C., D. C.Md.1956, 140 F.Supp. 165, affirmed 4 Cir., 1957, 240 F.2d 684, does not seem to me to be persuasive authority for a contrary result as to the McGuire Act since that dealt primarily with the Maryland statute. Nor is the decision of much assistance in construing the Feld-Crawford Act, for despite the similarity of language between the Maryland and New York acts, the New York legislature and the New York courts have already firmly indicated an intent to protect the home market as much as possible. See Raxor Corp. v. Goody, 1954, 307 N.Y. 229, 120 N.E.2d 802 certiorari denied, 1954, 348 U.S. 863, 75 S.Ct. 88, 99 L.Ed. 680 and Eastman Kodak Co. v. Masters, Inc., Sup.1956, 153 N.Y.S.2d 433. Moreover, in Bissell we do not have the many contacts by the seller with the fair trade state which make the transactions before us sales in New York for all practical purposes.